[No. S139791. Aug. 28, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY W. CROSS, Defendant and Appellant.

## COUNSEL

Stephen B. Bedrick, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Donald E. de Nicola, Deputy State Solicitor General, Robert R. Anderson, Mary Jo Graves and Dane R. Gillette, Chief Assistant Attorneys General, Gerald A. Engler, Assistant Attorney General, Stan Helfman, Christopher J. Wei, Laurence K. Sullivan and Michael D. O'Reilley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—Anyone who in the commission of a felony *"personally inflicts* great bodily injury . . . shall be punished by an additional and consecutive term of imprisonment." (Pen. Code, § 12022.7, subd. (a), italics added.)[1] Under the "One Strike" law (§ 667.61), when a defendant is convicted of a specified sex offense and the jury finds true a section 12022.7 allegation, the trial court must sentence the defendant to a prison term of 15 years to life. Here, defendant was so sentenced based on the jury's finding that he had inflicted great bodily injury on his 13-year-old stepdaughter, who

---

[1] All further statutory references are to the Penal Code.

after defendant had sexual intercourse with her became pregnant and underwent an abortion that defendant encouraged her to have.

■ First, can a pregnancy without medical complications that results from unlawful but nonforcible sexual conduct with a minor support a finding of great bodily injury? It can, and here evidence of the pregnancy was sufficient to support such a finding. Second, did the trial court err by not instructing on the meaning of personal infliction? No. Third, was it error for the trial court to instruct the jury that an abortion may constitute great bodily injury, a legally correct statement that did not apply to the facts here, because defendant did not personally perform the surgical abortion? Yes, giving the instruction was erroneous; but it did not mislead the jury.

## I

In July 1995, defendant, who is not the biological father of victim K., married K.'s mother. During the summer of 2002, then 13-year-old K. took care of her younger sister and brother while their parents were away at work. The mother's evening shift began at 9:00 or 10:00 p.m. The shifts of defendant, then 39 years old, varied, and he was often home at night. One night in early June 2002, after K. and her siblings were asleep in their bedroom, defendant awakened K. and told her to follow him. In the master bedroom, he undressed her and had sexual intercourse with her. He then threatened that if she told her mother, she would be taken away by the police and not allowed to see her family. Defendant continued to have intercourse with K. regularly while her mother was at work. Once, defendant held K. by the head and placed his penis in her mouth. Although K. occasionally objected to these sex acts, she was reluctant to do so for fear defendant would not allow her to go out with her friends or would take away her cell phone.

In August 2002, K. told defendant she might be pregnant. On September 25, her suspicion was confirmed by a positive pregnancy test performed at a local clinic to which defendant had taken her.

In December 2002, after K.'s mother commented on K.'s weight gain, defendant took the girl back to the clinic for an abortion. The advanced stage of the pregnancy, five and a half months, required a surgical procedure that could not be performed at the clinic, which then referred K. to San Francisco General Hospital.

The abortion required certain medical procedures at the hospital on two successive days. Each day, without her mother's knowledge, defendant kept K. out of school to take her to the hospital.

On December 17, 2002, their first visit to the hospital, K., at defendant's direction, falsely filled out the admission forms, giving her age as 14 years, using defendant's last name as her own, and describing him as her father. An ultrasound image of the fetal head indicated that the fetus was 22 weeks two days old—near the end of the second trimester of pregnancy. Such a late-stage pregnancy required a surgical abortion. That day, hospital staff inserted dilators into K.'s cervix.

The next day, defendant brought K. back to the hospital. K. was given anesthesia and, after additional dilation of her cervix, the fetus was removed from her uterus. Measurement of the fetal foot confirmed a 22-week pregnancy. The abortion lasted 13.1 minutes, resulted in no medical complications, and the hospital released K. to defendant. DNA analyses introduced at trial of tissue samples from the fetus, from K., and from defendant indicated a 99.99 percent probability that defendant had fathered the fetus.

After the abortion, defendant resumed sexual activity with K. until July 9, 2003, when her mother came across documents relating to the abortion. The next day, K. reported her sexual molestation to the police, who arrested defendant.

Defendant was charged with, in count 1, the felony of committing a lewd and lascivious act on a child under the age of 14 by force, violence, duress, menace, or fear (§ 288, subd. (b)(1)), with an allegation that he inflicted great bodily injury on the victim (§§ 12022.7, 12022.8); in count 2, the felony of aggravated sexual assault by oral copulation of a child under the age of 14 and 10 or more years younger than defendant (§ 269, former subd. (a)(4) as enacted by Stats. 1994, ch. 48X, p. 8761); and in counts 3 and 4, two charges of felony aggravated sexual assault by rape of a child under the age of 14 and 10 or more years younger than defendant (§ 269, former subd. (a)(2) as enacted by Stats. 1994, ch. 48X, p. 8761).

In closing argument at trial, the prosecutor told the jury that the charge of lewd and lascivious conduct with a child alleged in count 1 was based on the act of sexual intercourse that resulted in K.'s pregnancy, and that the jury could consider either the pregnancy or the abortion, or both, as a basis for the allegation of personal infliction of great bodily injury. Arguing that "[a]ny pregnancy can count" so long as "you find it's substantial or significant," the prosecutor urged the jurors to ask themselves if "carrying a baby for 22 weeks . . . in a 13-year-old body" was significant or substantial. Comparing the invasiveness of the abortion to that of a heart transplant, the prosecutor argued the abortion "was substantial" and "significant," because it was an operation requiring anesthesia and drugs to control bleeding. Turning to the

statutory requirement of "personally" inflicting great bodily injury, the prosecutor argued that defendant "only needs to do the act of getting her pregnant or having an abortion."

After being instructed that the pregnancy *or* the abortion could be great bodily injury, the jury found defendant guilty of committing a lewd act on a child under the age of 14 (§ 288, subd. (a)), a lesser offense of the forcible crime alleged in count 1, and it found that defendant personally inflicted great bodily harm in committing the offense (§ 12022.7). The jury also found defendant guilty of oral copulation with a person under 14 years of age and more than 10 years younger than himself (§ 288a, subd. (c)(1)), a lesser offense of the forcible oral copulation offense (§ 269, former subd. (a)(4)) that was charged in count 2. Defendant was found not guilty of the remaining charges.

For the nonforcible oral copulation (§ 288a, subd. (c)(1)), the trial court sentenced defendant to a determinate prison term of six years. Under the One Strike law, for the lewd act offense with the great bodily injury finding, the trial court sentenced defendant to an indeterminate prison term of 15 years to life to be served consecutively to the determinate six-year term. (§ 667.61, subds. (b), (c)(4), (e)(3).)

Defendant appealed. The Court of Appeal affirmed the trial court's judgment. We granted defendant's petition for review.

## II

Defendant argues that a pregnancy without medical complications that results from unlawful but nonforcible intercourse, as occurred here, can never support a finding of great bodily injury. We disagree.

Great bodily injury "means a significant or substantial physical injury." (§ 12022.7, subd. (f); see § 12022.8;[2] *People v. Escobar* (1992) 3 Cal.4th 740, 749–750 [12 Cal.Rptr.2d 586, 837 P.2d 1100] (*Escobar*); see also *People v. Miller* (1977) 18 Cal.3d 873, 883 [135 Cal.Rptr. 654, 558 P.2d

---

[2] Section 12022.7, subdivision (a), imposes a sentence enhancement of three years for great bodily injury caused in the commission of felonies in general, but section 12022.8 imposes a sentence enhancement of five years for great bodily injury inflicted in the commission of enumerated sexual felonies. (Several of the crimes with which defendant was charged are listed in § 12022.8, but the lesser included offenses of which he was actually convicted are not specified in that statute.) Section 12022.8 adopts by reference the definition of great bodily injury contained in section 12022.7, subdivision (f), but it does not use the latter provision's adjective "personally," instead speaking of "[a]ny person who inflicts great bodily injury." (§ 12022.8.) Nonetheless, section 12022.8 has been construed to require personal infliction. (*People v. Ramirez* (1987) 189 Cal.App.3d 603, 627 [236 Cal.Rptr. 404].)

552] [construing great bodily injury in former §§ 213 and 461 to mean "significant or substantial bodily injury or damage as distinguished from trivial or insignificant injury or moderate harm"].) This court has long held that determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury. (*Escobar, supra,* 3 Cal.4th at p. 750; *People v. Wolcott* (1983) 34 Cal.3d 92, 109 [192 Cal.Rptr. 748, 665 P.2d 520].) " 'A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description.' " (*Escobar, supra,* 3 Cal.4th at p. 752, quoting *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836 [159 Cal.Rptr. 771]; *People v. Clay* (1984) 153 Cal.App.3d 433, 460 [200 Cal.Rptr. 269].) Where to draw that line is for the jury to decide.

Defendant here maintains that only a pregnancy resulting from forcible rape can result in great bodily injury. Pointing to the jury's verdict of not guilty on the charge of forcible rape, defendant contends that neither *Escobar, supra,* 3 Cal.4th 740, nor *People v. Sargent* (1978) 86 Cal.App.3d 148 [150 Cal.Rptr. 113] (*Sargent*), each involving forcible rape, is authority for the proposition that when, as here, a victim of unlawful but nonforcible sexual conduct becomes pregnant she has suffered great bodily injury.

In *Escobar*, this court described great bodily injury as "substantial injury *beyond* that inherent in the offense." (*Escobar, supra,* 3 Cal.4th at p. 746; see also *People v. Modiri* (2006) 39 Cal.4th 481, 492 [46 Cal.Rptr.3d 762, 139 P.3d 136]; *People v. Jefferson* (1999) 21 Cal.4th 86, 101 [86 Cal.Rptr.2d 893, 980 P.2d 441].) But *Escobar* went on to observe that to be significant or substantial the injury need not be so grave as to cause the victim " 'permanent,' 'prolonged,' or 'protracted' " bodily damage. (*Escobar, supra,* at p. 750.)

In *Escobar*, the victim's repeated efforts to escape were prevented by her captor, who struck her, dragged her by the hair over pavement, pushed his finger into her eye, and otherwise physically abused and restrained her. (*Escobar, supra,* 3 Cal.4th at p. 744.) We concluded that evidence of the "extensive bruises and abrasions over the victim's legs, knees and elbows, injury to her neck and soreness in her vaginal area of such severity that it significantly impaired her ability to walk" provided a sufficient "quantum of evidence" to support the jury's finding of great bodily injury. (*Id.* at p. 750; see also *People v. Le* (2006) 137 Cal.App.4th 54, 59–60 [39 Cal.Rptr.3d 741] [soft-tissue gunshot wound that prevented the victim from walking unaided for seven weeks qualified as great bodily injury under § 12022.53, subd. (d)].) In *Escobar,* the injuries of the rape victim reflected "a degree of brutality and violence substantially beyond that necessarily present" in a forcible rape. (*Escobar, supra,* at p. 750.)

In *Sargent, supra*, 86 Cal.App.3d 148, a neighbor broke into the home of a 17-year-old girl, forced her at knifepoint to orally copulate him, and forcibly raped her, causing her to become pregnant and to undergo an abortion. (*Id.* at p. 150.) Citing a dissent from a Court of Appeal decision involving a forcible rape (*People v. McIlvain* (1942) 55 Cal.App.2d 322, 334 [130 P.2d 131] (dis. opn. of Schauer, P. J.)), the Court of Appeal in *Sargent* stated that "[p]regnancy *resulting from rape* is great bodily injury." (*Sargent, supra*, at p. 151, italics added.) Pointing to the "[m]ajor physical changes" that take place in a woman's body during pregnancy, *Sargent* observed that "[p]regnancy cannot be termed a trivial, insignificant matter" and is "all the more devastating when imposed on a woman by forcible rape." (*Ibid.*) It further stated that "[a]n abortion by whatever method used constitutes a severe intrusion into a woman's body." (*Id.* at p. 152.)

The Court of Appeal's holding in *Sargent* was confined to the circumstances presented: "We merely find that *the facts* in this case, i.e., a pregnancy followed by an abortion, clearly support a finding of great bodily injury." (*Sargent, supra*, 86 Cal.App.3d at p. 152, italics added.) The egregious facts in *Sargent* involved the forcible rape of a virgin who pleaded in vain with her attacker not to rape her and who suffered more than minor physical injuries, including vaginal "excoriation and inflammation" and scratch wounds to her neck. (*Id.* at p. 150.) Those injuries, coupled with the pregnancy and abortion, provided evidence of physical injury that was "significantly and substantially beyond that necessarily present" in the commission of a forcible rape. (*Id.* at p. 152.)

Citing *Sargent, supra*, 86 Cal.App.3d 148, the Court of Appeal in *People v. Johnson* (1986) 181 Cal.App.3d 1137 [225 Cal.Rptr. 251] reasoned that if, as in *Sargent*, a woman who became pregnant after a forcible rape can be found to have suffered great bodily injury, then surely, as occurred in *Johnson*, a forcible rape victim infected by her attacker with herpes, an incurable venereal disease, can be found to have sustained great bodily injury. (*Id.* at pp. 1140–1141.)

*Escobar, Sargent*, and *Johnson* each acknowledges that a great bodily injury determination by the jury rests on the facts as presented at trial in the context of the particular crime and the particular injuries suffered by the victim. (*Escobar, supra*, 3 Cal.4th at p. 750; *Sargent, supra*, 86 Cal.App.3d at p. 152; *People v. Johnson, supra*, 181 Cal.App.3d at p. 1140.) None holds that medical complications or the use of force is required to support a finding of great bodily injury. And section 12022.7 makes no mention of any such limitation. Accordingly, we reject the contention of defendant here that a

pregnancy without medical complications that results from nonforcible but unlawful intercourse can never support a finding of great bodily injury.[3]

Proof that a victim's bodily injury is "great"—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury. (*People v. Harvey* (1992) 7 Cal.App.4th 823, 827–828 [9 Cal.Rptr.2d 17] [second degree burns requiring treatment for "at least a month"]; *People v. Beltran* (1989) 210 Cal.App.3d 1295, 1308 [258 Cal.Rptr. 884] [five surgeries, including a bone graft]; *People v. Jaramillo, supra*, 98 Cal.App.3d at p. 836 [contusions, swelling, "severe discoloration," and look of anguish on child's face coupled with pain from casual touching of shoulder].) Thus, when victims of unlawful sexual conduct experience physical injury and accompanying pain beyond that "ordinarily experienced" by victims of like crimes (*People v. Williams* (1981) 115 Cal.App.3d 446, 454 [171 Cal.Rptr. 401]), such additional, "gratuitous injury" will support a finding of great bodily injury (*Escobar, supra*, 3 Cal.4th at p. 746).

Here, with respect to K.'s pregnancy, the prosecutor urged the jurors to rely on their "common experiences" to find that she had suffered great bodily injury by "carrying a baby for 22 weeks or more than 22 weeks . . . in a 13-year-old body." There was also testimony that K., who had never given birth before, was carrying a fetus "the size of two-and-a-half softballs." We need not decide in this case whether every pregnancy resulting from unlawful sexual conduct, forcible or otherwise, will invariably support a factual determination that the victim has suffered a significant or substantial injury, within the language of section 12022.7. But we conclude that here, based solely on evidence of the pregnancy, the jury could reasonably have found that 13-year-old K. suffered a significant or substantial physical injury.

## III

At the prosecution's request, over defendant's objection, the trial court modified a standard jury instruction on great bodily injury (CALJIC No. 17.20) by adding these two sentences: "A pregnancy *or* an abortion may constitute great bodily injury. You are the exclusive judges whether the defendant personally inflicted great bodily injury in this case." (Italics added.)

---

[3] To the extent defendant argues that great bodily injury invariably requires the application of physical force to the victim in order to cause great bodily injury, we reject that view. "A plain reading of Penal Code section 12022.7 indicates the Legislature intended it to be applied broadly" (*People v. Sainz* (1999) 74 Cal.App.4th 565, 574 [88 Cal.Rptr.2d 203]), and therefore the statute itself sets out the only criminal offenses—murder, manslaughter, arson, and unlawfully causing a fire, each of which incorporates enhanced sentencing for such injury— that are not subject to a finding of great bodily injury (§ 12022.7, subd. (g)).

In challenging the modified jury instruction, defendant does not contend that an abortion can never constitute great bodily injury; thus, he does not assert that the instruction misstated the law. Instead, he argues that the first added sentence was improper because he did not personally inflict the surgical abortion, and that therefore the abortion could not support a great bodily injury finding under section 12022.7, which requires "personally" inflicting the injury.

■ Defendant is correct that there was no evidence he personally performed the abortion. For that reason the modified instruction, insofar as it stated that an abortion can be great bodily injury, was "an 'abstract' instruction, i.e., 'one which is correct in law but irrelevant.' " (*People v. Rowland* (1992) 4 Cal.4th 238, 282 [14 Cal.Rptr.2d 377, 841 P.2d 897]; see also *People v. Guiton* (1993) 4 Cal.4th 1116, 1129 [17 Cal.Rptr.2d 365, 847 P.2d 45] ["It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case."].) Giving an instruction that is correct as to the law but irrelevant or inapplicable is error. (*People v. Rowland, supra,* at p. 282.) Nonetheless, giving an irrelevant or inapplicable instruction is generally " 'only a technical error which does not constitute ground for reversal.' " (*Ibid.*)

Here, in addition to the modified great bodily injury instruction, the jury was given this standard instruction (CALJIC No. 17.31): "The purpose of the court's instructions is to provide you with the applicable law so that you may arrive at a just and lawful verdict. *Whether some of the instructions apply will depend upon what you find the facts to be. Disregard any instruction which applies to facts determined by you not to exist.*" (Italics added.) Viewing the instructions as a whole, as a reviewing court must (*People v. Burgener* (1986) 41 Cal.3d 505, 538 [224 Cal.Rptr. 112, 714 P.2d 1251]; see *People v. Lewis* (2001) 25 Cal.4th 610, 649 [106 Cal.Rptr.2d 629, 22 P.3d 392]), we conclude the jury in this case would have understood that its duty was to determine not only whether great bodily injury occurred but also whether, as required by section 12022.7, subdivision (a), defendant "personally" inflicted it. The evidence shows that on two successive days defendant kept his 13-year-old stepdaughter out of school to drive her to the hospital where he told her to use his last name and to identify him as her father. The modified instruction did not in any way suggest to the jury that those acts of facilitation would constitute personal infliction of the abortion.

■ Defendant nonetheless contends that because the trial court did not explain the meaning of the statutory phrase "personally inflicts," jurors might have mistakenly concluded that his acts of facilitating the abortion satisfied the statutory requirement of personally inflicting the injury. A defendant challenging an instruction as being subject to erroneous interpretation by the

jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant. (*Boyde v. California* (1990) 494 U.S. 370, 380 [108 L.Ed.2d 316, 110 S.Ct. 1190]; *People v. Clair* (1992) 2 Cal.4th 629, 663 [7 Cal.Rptr.2d 564, 828 P.2d 705].) ■ " 'A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning.' [Citations.]" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1012 [44 Cal.Rptr.3d 632, 136 P.3d 168].) Here, the meaning of the statutory requirement that the defendant *personally inflict* the injury does not differ from its nonlegal meaning. Commonly understood, the phrase "personally inflicts" means that someone "in person" (Webster's 7th New Collegiate Dict. (1970) p. 630), that is, directly and not through an intermediary, "cause[s] something (damaging or painful) to be endured" (*id.* at p. 433). Applied to this case, that definition does not encompass defendant's facilitative acts in connection with the abortion.

Maintaining to the contrary, defendant points to the prosecutor's argument to the jury that defendant "only needs to do the act of getting her pregnant *or* having an abortion." (Italics added.) Defendant argues that even though the abortion was done by medical personnel at a hospital, and thus did not satisfy the personal infliction requirement of section 12022.7, subdivision (a), the prosecutor's argument to the jury could have misled it into concluding that by facilitating the abortion defendant personally inflicted the harm. We disagree.

The prosecutor's statement at issue was immediately preceded by these comments: "There is a requirement he personally inflict the injury, and that's easy in this case; yes, he personally inflicted, he has sexual intercourse with her and he testified to that. He said I remember the time I got her pregnant. Did he have to specifically intend that she get pregnant at that time? No." It was then that the prosecutor said: "The judge will instruct you he only needs to do the act of her getting pregnant or having an abortion; he doesn't have to specifically intend when having sex with her she is going to get pregnant or have an abortion." From these comments, the jury would have understood the prosecutor to be arguing (1) that defendant personally inflicted the pregnancy by having sexual intercourse with the victim, and (2) that there was no requirement that defendant specifically intended the victim to become pregnant or have an abortion.

On their face, or in the abstract, these statements by the prosecutor were correct, including the comment that great bodily injury can be established by either a pregnancy or an abortion, a comment the trial court incorporated in a sentence it added to the standard instruction on great bodily injury. Although legally correct in theory, the latter statement, as embodied in the court's instruction to the jury, was factually inapplicable because defendant did not

personally perform the surgical abortion. The error, however, would not have misled a rational jury into concluding that by facilitating the abortion (by, among other things, taking his 13-year-old stepdaughter to hospital appointments on two successive days), defendant personally performed the abortion; therefore, the error did not violate defendant's state or federal constitutional rights. (*People v. Clair, supra,* 2 Cal.4th at p. 663.)

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**BAXTER, J.,** Concurring.—I concur fully in the majority opinion, which finds that the instruction's solitary reference to abortion as a potential candidate for great bodily injury in the abstract was not reasonably likely to have caused this jury to overlook or misapprehend the plainly stated requirement that defendant have personally inflicted the injury in the commission of the charged felony.[1] I write separately to explain that even if it were otherwise, any error was harmless.

Defendant's theory of prejudice rests entirely on the possibility that a juror might have found the great bodily injury enhancement true by considering only the abortion, which defendant did not personally inflict. Yet, as the majority opinion makes clear (see maj. opn., *ante,* at p. 66), the jury could properly have considered the abortion, a medical procedure the victim selected in response to her pregnancy, in assessing the *magnitude of the injury occasioned by her pregnancy*—which defendant unquestionably inflicted. Any juror who found that the abortion constituted great bodily injury under an erroneous understanding of the requirement of personal infliction could not have failed to find that K. suffered great bodily injury under the valid theory that the gravity of the pregnancy injury, which defendant admitted he had inflicted, could be measured by considering the circumstances of the abortion. Hence, any juror who erroneously relied on the abortion to find that defendant personally inflicted great bodily injury would also have found (1) that defendant personally inflicted the pregnancy and (2) that the pregnancy constituted significant or substantial physical injury in light of the abortion. It is thus "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error" (*Neder v. United States* (1999) 527 U.S. 1, 18 [144 L.Ed.2d 35, 119 S.Ct.

---

[1] However, the point might be clarified in future cases by instructing the jury along these lines: "A pregnancy may constitute great bodily injury. You may consider the circumstances and effects of the abortion of that pregnancy in determining whether the pregnancy constituted great bodily injury in this case."

1827] (*Neder*)), which is the harmless-error inquiry under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] (*Chapman*). (*Neder, supra*, 527 U.S. at pp. 15, 18.)

Defendant does not deny that any error was harmless under this analysis or otherwise claim that the record "contains evidence that could rationally lead to a contrary finding." (*Neder, supra*, 527 U.S. at p. 19.) Indeed, defendant does not actually apply the *Chapman* standard at all but divines prejudice nonetheless on the ground that the verdict is silent as to whether the jury necessarily found the great bodily injury enhancement true on a valid legal theory (i.e., that defendant personally inflicted the pregnancy) rather than on an invalid legal theory (i.e., that defendant personally inflicted the abortion). For this theory of prejudice, defendant relies on *People v. Guiton* (1993) 4 Cal.4th 1116 [17 Cal.Rptr.2d 365, 847 P.2d 45].[2] Although *Guiton* observed that reliance on other portions of the verdict is "[o]ne way" of finding an instructional error harmless (*Guiton*, at p. 1130), we have never intimated that this was the *only* way to do so. Indeed, *Guiton* noted that we were not then presented with the situation of a jury's having been instructed with a legally adequate and a legally inadequate theory and that we therefore "need not decide the exact standard of review" in such circumstances—although we acknowledged that "[t]here may be additional ways by which a court can determine that error in [this] situation is harmless. We leave the question to future cases." (*Id.* at p. 1131.) Because this case only now presents that issue, *Guiton* does not provide a dispositive answer to the question.

I note that a related issue is currently pending before the United States Supreme Court in *Chrones v. Pulido*, No. 07-544, cert. granted Feb. 25, 2008. Although the high court will obviously have the last word, I agree with the weight of existing authority, which applies the *Chapman* harmless-error standard in determining whether the submission to the jury of two legal theories, one valid and one invalid, requires reversal. The high court has already applied the *Chapman* framework where the instructions omit an element (*Neder, supra*, 527 U.S. at pp. 4, 15) or misdescribe an element (*California v. Roy* (1996) 519 U.S. 2, 5–6 [136 L.Ed.2d 266, 117 S.Ct. 337]). In both situations, the sole theory submitted to the jury is legally defective, yet the error is amenable to harmless-error analysis. (Accord, *People v. Cole* (2004) 33 Cal.4th 1158, 1208 [17 Cal.Rptr.3d 532, 95 P.3d 811] ["Under state law, instructional error that withdraws an element of a crime from the jury's consideration is harmless if there is 'no reasonable probability that the outcome of defendant's trial would have been different had the trial court properly instructed the jury.' "]; *People v. Breverman* (1998) 19 Cal.4th 142, 165 [77 Cal.Rptr.2d 870, 960 P.2d 1094] [misdirection of the jury under state

---

[2] Defendant also cites *People v. Morgan* (2007) 42 Cal.4th 593, 613 [67 Cal.Rptr.3d 753, 170 P.3d 129], but *Morgan* does nothing other than cite *Guiton*.

law "is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome."].) In my view, an instructional error with respect to an element does not become more problematic simply because the jury may potentially have relied on an alternative theory that was entirely error free. Defendant's argument "reduces to the strange claim that, because the jury here received both a 'good' charge and a 'bad' charge on the issue, the error was somehow more pernicious than in *Rose* [*v. Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101]]— where the *only* charge on the critical issue was a mistaken one. That assertion cannot possibly be right, so it is plainly wrong." (*Quigley v. Vose* (1st Cir. 1987) 834 F.2d 14, 16; accord, *Becht v. U.S.* (8th Cir. 2005) 403 F.3d 541, 548 [it would be "anomalous" to preclude harmless-error review under *Chapman* "because the jury *also* was given the option to convict based on a constitutionally *valid* theory . . ."]; cf. *U.S. v. Edwards* (5th Cir. 2002) 303 F.3d 606, 641 [holding that the standard of harmlessness set forth in *Griffin v. United States* (1991) 502 U.S. 46 [116 L.Ed.2d 371, 112 S.Ct. 466] applies "where a disjunctive instruction with a factually insufficient component is given, even if that component is also legally insufficient."].)

To the extent defendant has simply assumed that his reading of *Guiton* is merely an application of the *Chapman* harmless-error standard, he is plainly mistaken, as the high court made clear in rejecting a similar argument made by the defendant in *Neder, supra*, 527 U.S. 1. Neder argued that an instructional error could be harmless in only three situations—(1) the defendant is acquitted of the offense on which the jury was improperly instructed, (2) the defendant admitted the element on which the jury was improperly instructed, or (3) other facts necessarily found by the jury are the functional equivalent of the omitted, misdescribed, or presumed element—but the high court flatly rejected this construct. (*Neder, supra*, 527 U.S. at pp. 13–15.) The proper test, as the court explained, "is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (*Id.* at p. 15, quoting *Chapman, supra*, 386 U.S. at p. 24.) This test does not depend on proof that the jury *actually* rested its verdict on the proper ground (*Neder, supra*, at pp. 17–18), but rather on proof beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error (*id.* at p. 18). Although the former *can be* proof of the latter (see *id.* at p. 26 (conc. opn. of Stevens, J.)), the *Neder* majority made clear that such a determination is not essential to a finding of harmlessness (*id.* at p. 16, fn. 1), which instead "will often require that a reviewing court conduct a thorough examination of the record" (*id.* at p. 19). Accordingly, an inability to show that the jurors unanimously found great bodily injury based on defendant's act of impregnating the victim, and that no juror relied solely on the abortion, is properly understood as a *predicate* for the application of the

*Chapman* harmless-error standard, not (as defendant mistakenly believes) the harmless-error analysis itself.

Under the proper analysis, it is obvious that any error was harmless. There was overwhelming and uncontradicted evidence, including DNA evidence, that defendant personally inflicted the pregnancy that was subsequently aborted. Indeed, defendant conceded he personally inflicted the pregnancy and even testified that he remembered which night K. became pregnant. The evidence that the pregnancy by itself was of sufficient magnitude to constitute great bodily injury was substantial. Any juror who failed to make such a finding and who relied instead on the abortion to establish great bodily injury would plainly have found, under correct instructions, that the pregnancy, when considered in light of that same abortion, established great bodily injury. The record here thus shows beyond a reasonable doubt that a rational jury would have found the great bodily injury enhancement true even in the absence of any asserted instructional error.

For this additional reason, I would affirm the judgment, including the jury's finding that defendant personally inflicted great bodily injury on the 13-year-old victim when he impregnated her, the pregnancy proceeded nearly to the end of the second trimester, and the abortion terminating the pregnancy required a surgical dilation and extraction over two days. On this record, no rational juror could have found otherwise.

Chin, J., concurred.

**CORRIGAN, J.,** Concurring.—I concur in the result reached by the majority. I write separately to urge that we resolve the broader issue. This case squarely presents a direct question: Does any pregnancy resulting from a sexual assault constitute a great bodily injury?

We have described a rape as "the quintessential 'violation of the self.' " (*People v. Escobar* (1992) 3 Cal.4th 740, 743 [12 Cal.Rptr.2d 586, 837 P.2d 1100].) That violation is surely exacerbated if it also results in pregnancy. A victim who is raped and made pregnant experiences a different degree of injury than the victim who is not impregnated. The rapist who impregnates his victim imposes a greater injury than is inflicted by the rape alone. It is reasonable for the Legislature to provide for an enhanced degree of punishment under that circumstance. The same is true if a child is impregnated by a defendant's lewd and lascivious conduct.

By statute, " 'great bodily injury' means a significant or substantial physical injury." (Pen. Code, § 12022.7, subd. (f).) As the majority notes, we have distinguished such an injury from one which is trivial or insignificant. (Maj.

opn., *ante*, at pp. 63–64.) Jurors determine whether an injury is "great" in light of instructions explaining that a "significant or substantial physical injury" is one that is not "moderate" or "minor." (Judicial Council of Cal. Crim. Jury Instns. (2008) CALCRIM No. 3160; CALJIC No. 17.20.1.)

In order to constitute a great bodily injury, the harm inflicted must exceed a certain threshold. Some injuries may not be sufficiently serious to satisfy that standard. For example, in the case of a broken bone, laceration, or unconsciousness, the existence of an injury in the sense of physical harm is self-evident. Once a jury determines that the defendant personally inflicted the injury while committing the charged offense, the only remaining question is whether the injury is great. A broken bone, for example, may be evaluated along a continuum from a small hairline fracture, needing no medical intervention, to the compound fracture of a major bone, requiring surgical repair.

Pregnancy is categorically different. By its nature it will always impose on the victim a sufficient impact to meet the great bodily injury standard. Pregnancy as an injury, a physical impact imposed by a crime, cannot be parsed out along a continuum. A woman is either pregnant or she is not. In *People v. Sargent* (1978) 86 Cal.App.3d 148 [150 Cal.Rptr. 113], the Court of Appeal concluded that the victim, impregnated by her rapist, suffered great bodily injury. Justice Gardner wrote: "Pregnancy can have one of the three results—childbirth, abortion or miscarriage. Childbirth is an agonizing experience. An abortion by whatever method used constitutes a severe intrusion into a woman's body. A miscarriage speaks for itself." (*Id.* at p. 152.) Under Justice Gardner's reasoning, it is impregnation, necessarily causing one of three consequences, that is the basis for the injury.[1] Because the impact of any pregnancy is so great, it is illogical to treat some pregnancies as trivial, or to suggest that juries could, somehow, determine that any criminally imposed pregnancy can be considered minor. Factors such as the age of the victim, as well as the outcome, duration, or problems associated with a pregnancy may make its impact even *more* substantial. The fact remains, however, that the impact of any pregnancy on the physical condition of the victim is never insignificant or insubstantial. Normally, the determination of great bodily injury is a question of fact for the jury. (*People v. Escobar, supra,* 3 Cal.4th at p. 750.) Unlike other potential injuries, however, there is no additional factual calculus for the jury to perform when a criminally imposed pregnancy is the basis for the injury.

---

[1] The majority accurately points out that the court in *People v. Sargent, supra,* 86 Cal.App.3d at page 152, concluded that the great bodily injury standard was satisfied under the circumstances of that case. (Maj. opn., *ante,* at p. 65.) Of course, any case establishes precedent under the facts it involves. That the circumstances in *Sargent* may have involved additional facts does not undermine the logical force of the observations noted above.

Moreover, a defendant's criminal culpability should not depend on the decisions made by others, days or months after his criminal conduct. In most instances, it is unlikely the defendant will have any role in the victim's choice regarding her pregnancy. Likewise, the timing and circumstances of an abortion will usually be beyond the defendant's ability to influence. An example may elucidate. Two rapists break into a college dormitory and each rapes a student. Both victims are impregnated by the assault. The first victim, A, spontaneously miscarries after a few weeks. The second victim, B, carries the fetus to term and delivers a child after an extended labor. The conduct of the rapists is the same: each raped a victim and impregnated her. Surely the injury to each victim, at the threshold level, is the same. Neither can be said to have suffered only a trivial injury. It makes no sense to reward A's rapist for the fortuity of the early miscarriage. And B's rapist would argue that he should not be punished more severely based on choices B made and over which he had no control.

Pregnancy is a sui generis condition that cannot fairly be described as trivial or insignificant. The Legislature intended that a Penal Code section 12022.7 enhancement be imposed on a defendant who personally inflicts a "significant or substantial" injury. (§ 12022.7, subd. (f).) Thus, interpretation of any criminally imposed pregnancy as constituting great bodily injury is necessarily true to the language of section 12022.7 and implements the Legislature's intent.

When the Legislature originally enacted Penal Code section 12022.7, it considered whether to include a list of qualifying injuries. Those examples included *prolonged* loss of consciousness, *severe* concussion, *protracted* loss of a bodily member or organ, *protracted* impairment of a bodily member or bone, wounds requiring *extensive* suturing and *serious* disfigurement. (*People v. Escobar, supra*, 3 Cal.4th at p. 747.) As the list itself makes plain, the examples contained gradations of injury that would require jury evaluation along a continuum of seriousness. As such, the list of examples would have been illustrative, but not dispositive. In *People v. Escobar* we opined that the Legislature's decision to omit the list "was to preclude the possibility that the specific examples set forth therein would be construed as exclusive of other types of injury not expressly enumerated." (*Ibid.*) Thus, rather than add a list that might be considered as more exacting and that would, in the end, still require jury parsing, the Legislature simply defined "great bodily injury" as " ' "significant or substantial physical injury," ' " adopting the language of the standard jury instruction then in use. (*Id.* at pp. 747–748.) Pregnancy, however, requires no jury parsing. Because pregnancy must result in childbirth, miscarriage or abortion, its infliction during a sexual assault is, by definition, a substantial or significant injury.

The majority states: "We need not decide in this case whether every pregnancy resulting from unlawful sexual conduct, forcible or otherwise, will invariably support a factual determination that the victim has suffered a significant or substantial injury, within the language of section 12022.7." (Maj. opn., *ante*, at p. 66.) The majority then concludes that "based solely on evidence of the pregnancy, the jury could reasonably have found that 13-year-old K. suffered a significant or substantial physical injury." (*Ibid.*) The majority does not resolve the question of whether a feloniously inflicted pregnancy constitutes great bodily injury as a matter of law under the statute. Thus, it falls to the Legislature to clarify and reaffirm its intent. At least two approaches are available. The Legislature could amend Penal Code section 12022.7 to define impregnation during a felonious sexual assault as great bodily injury.[2] Alternatively, the Legislature could create a new enhancement, imposing an additional penalty for impregnating a victim during a sexual assault. Either alternative would relieve future juries from attempting to distinguish among pregnancies in ways that are logically unsound.

I conclude that a properly instructed jury would have been told that a sexual assault that impregnates the victim constitutes great bodily injury, when that impregnation is personally inflicted by the defendant. Thus, under either the approach of the majority or the analysis urged here, any instructional error was inarguably harmless. The jury unanimously concluded that

---

[2] Several states including Michigan, Nebraska, Minnesota and Illinois define the concepts of "bodily harm," "personal harm," or "serious personal injury" by way of a list of enumerated injuries that includes pregnancy, and punish more severely sexual crimes that entail such harm or injury. (See Mich. Comp. Laws, § 750.520a, subd. (n) [" 'Personal injury' means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ."]; Neb. Rev. Stat. § 28-318, subd. (4) ["Serious personal injury means great bodily injury or disfigurement, extreme mental anguish or mental trauma, pregnancy, disease, or loss or impairment of a sexual or reproductive organ."]; Minn. Stat. § 609.341, subd. 8 [personal injury defined as "bodily harm . . . or severe mental anguish or pregnancy"].)

Illinois Compiled Statutes, chapter 720, article 12, section 12-12, subdivision (b), defines "bodily harm" to mean "physical harm" that "includes, but is not limited to, sexually transmitted disease, pregnancy and impotence." An accused who commits sexual assault that causes bodily harm has committed an aggravated offense. (720 Ill. Comp. Stat. 5/12-14.)

Wisconsin follows a different route, defining first degree sexual assault to include nonconsensual "sexual contact or sexual intercourse" that causes "pregnancy or great bodily harm." (Wis. Stat. § 940.225, subd. (1)(a).) It then defines "great bodily harm" to mean "bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." (Wis. Stat. § 939.22, subd. (14).)

In New Mexico, criminal sexual penetration of the first and second degree may be perpetrated by the use of force or coercion that results in personal injury to the victim. (N.M. Stat. Ann. § 30-9-11(D), (E).) "Personal injury" is defined as "bodily injury to a lesser degree than great bodily harm, and includes, but is not limited to, disfigurement, mental anguish, chronic or recurrent pain, pregnancy or disease or injury to a sexual or reproductive organ." (N.M. Stat. Ann. § 30-9-10(D).)

defendant committed lewd and lascivious conduct, and defendant admitted that his act of intercourse resulted in the pregnancy. Based on the jury's finding and defendant's concession, the only result available is that defendant inflicted a great bodily injury by impregnating K. during a criminal assault.

George, C. J., concurred.