Filed 4/9/15  P. v. Wilson CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B259017 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA093956) |
| v. | |
| ADRIAN WILSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Arthur Jean, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Chung L. Mar, Deputy Attorney General, Viet H. Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

_____

The jury found defendant and appellant Adrian Wilson guilty in count 5 of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)),[1] and in counts 6 and 7 of lewd act upon a child (§ 288, subd. (a)).[2] The jury found true the allegations that defendant personally inflicted great bodily injury, to wit pregnancy, on the victim as to the lewd acts charged in counts 6 and 7. (§ 667.61, subds. (a) & (d).)[3] In a bifurcated proceeding, the trial court found true that defendant suffered: (1) a serious felony prior conviction (§ 667, subd. (a)(1)); and (2) a serious and/or violent prior felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

Defendant was sentenced to an aggregate term of 111-years-to-life. As to counts 6 and 7, the trial court imposed consecutive terms of 50-years-to-life (25-years-to-life, doubled under the three strikes law.) A 5 year enhancement was added to count 7 based on the serious felony prior conviction under section 667, subdivision (a)(1). On count 5, defendant was sentenced to a determinate term of 6 years (the upper term of three years, doubled under the three strikes law.)

Defendant contends that there is insufficient evidence to support the jury's finding of great bodily injury as to counts 6 and 7. We affirm the judgment.

---

[1] All further statutory references are to the Penal Code, unless stated otherwise.

[2] Defendant was found not guilty in count 1 of inflicting corporal injury to a child. (§ 273d, subd. (a).)

[3] Section 667.61 provides for a prison sentence of 25-years-to-life for a lewd act (§ 667.61, subd. (c)(8)) involving the infliction of great bodily injury (§ 667.61, subd. (d)(6); see § 12022.7, subd. (a)).

2

# FACTS[4]

T.W. is the daughter of defendant and C.S. (mother). T.W. lived with mother, and rarely saw defendant until he obtained partial custody of T.W. when she was about 11 years old. Defendant began sexually abusing T.W. in 2011, when she was 12 years old. The abuse began with oral sex and progressed to sexual intercourse. T.W. became pregnant sometime in June 2011.

On September 14, 2011, defendant took T.W. to Family Planning Associates Medical Group. Defendant signed and dated a release form for an ultrasound examination, which showed that T.W.'s fetus was 10 weeks old. T.W. was given pregnancy counseling, and chose to terminate the pregnancy with an abortion, performed by the staff gynecologist. The abortion was an aspiration curettage, done by dilating the cervix and aspirating the tissue. Fetal tissue was removed from T.W. and sent to a laboratory for further testing because T.W. was only 12 years old at that time of the abortion. Slides of the fetal tissue and fetal cells were preserved.

Defendant continued to have sexual intercourse with T.W. To prevent pregnancy, T.W. took birth control pills, and defendant would either use condoms or remove his penis from T.W.'s vagina before he ejaculated. T.W. became pregnant again at age 13. Defendant suspected that T.W. was pregnant when he noticed that she was not taking her birth control pills. He testified: "And not only that, she wasn't eating right. Normally we had dinner every night together as a family. And she would leave whole plates. She was throwing up. [¶] [¶] [¶] [¶] I assumed she was [pregnant] because she was throwing up . . . . I knew something was wrong."

On June 14, 2012, defendant took T.W. to Family Planning Associates. An ultrasound examination showed that T.W. was 14 weeks pregnant. A second trimester abortion was performed on T.W. in stages on two consecutive days, which involved

---

[4] Because defendant solely challenges the sufficiency of the evidence in support of the great bodily injury enhancements on counts 6 and 7, we include only the facts that are relevant to those counts.

dilation of the cervix and evacuation of the uterus.  General anesthesia was administered.  There were no complications.  The fetus and other tissue were removed from T.W., placed in a container, and sent to a laboratory.

On approximately September 2, 2012, T.W. called mother and told her that she had an abortion.  Mother told T.W. to come home to talk about it.  T.W. told mother that "she had two abortions, and she was having sex with her father."  Mother called the police immediately.

Detectives from the Long Beach Police Department obtained DNA samples from T.W. and defendant.  Comparison of the DNA samples from T.W. and defendant to the samples from the two abortions indicated a 99.999 percent probability that defendant fathered both fetuses.

## DISCUSSION

Defendant contends that there is insufficient evidence to support the great bodily injury findings on counts 6 and 7 for lewd act upon a child.  He argues that the jury improperly considered T.W.'s abortions when assessing whether he inflicted great bodily injury, and that the prosecutor's closing argument misled the jury by suggesting that it contemplate T.W.'s pregnancy "in the abstract," and imagine what would have happened if T.W. had carried the pregnancies to term.  Defendant's arguments are without merit.

### *Standard of Review*

The Fifth and Sixth Amendments, which apply to the states through the Fourteenth Amendment, require the prosecution to prove all elements of a crime beyond a reasonable doubt.  (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 277-278.)  A conviction supported by insufficient evidence violates the Due Process Clause of the Fourteenth Amendment and must be reversed.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 317-319.)  The same is true of enhancements.  (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

4

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Avila* (2009) 46 Cal.4th 680, 701.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence. [Citation.]" (*People v. Medina* (2009) 46 Cal.4th 913, 919.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*).) "Substantial evidence includes circumstantial evidence and the reasonable inferences flowing therefrom." (*People v. Ugalino* (2009) 174 Cal.App.4th 1060, 1064.) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation]." (*Zamudio*, *supra*, at p. 357.) "The standard of review is the same when the prosecution relies mainly on circumstantial evidence. [Citation.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 104.)

***Relevant Proceedings***

We begin with the language of the felony information. It alleges defendant inflicted great bodily injury, "to wit pregnancy." During the prosecutor's opening statement, before the presentation of evidence, she described the lewd act charges to the jury, including the allegations that defendant "caused great bodily injury. And in this case it is the pregnancy."

In her first argument to the jury, the prosecutor stated that the great bodily injury allegations were based on T.W.'s pregnancies. "Now, count 6 and 7 carries a special allegation, PC 12022.7 (a). During the commission of a lewd act on a child, great bodily injury was inflicted. This requires that the defendant personally inflicted great bodily injury upon the child. [¶] In this case, we are alleging it was the pregnancy. What does

5

great bodily injury mean?  Most of the time we think about it in terms of a gunshot wound, broken bone, paralysis, in this case pregnancy.  The way the law defines it is substantial or significant.  It is more than minor, moderate harm or injury.  Without a doubt, the statute covers the pregnancy."

The prosecutor's argument later returned to the great bodily injury allegations.  "Now, we have the great bodily injury allegation.  And, like I said before, we are so used to gunshot wounds and broken bones and things like that when we talk about this allegation.  But at the bottom line is pregnancy, and the pregnancy as to a twelve-year old and a thirteen-year old in this case absolutely, absolutely is substantial and significant to that girl's body.  [¶]  You can use your common experience.  You can rely on that, think about all of the different changes that a girl's body would go through at those ages in bearing a child.  And the abortion itself is a surgery that she elected to have to change that condition, to get rid of that condition.  She had to go through surgery in order to not be pregnant anymore.  And you can take that into account when thinking about, again, the substantial and significant nature of her being pregnant.  [¶]  There is also the fact of her age.  What would happen to a twelve-year old?  What would happen to a thirteen-year old in being pregnant?  Would there be complications?  Would there be stress on the body?  Absolutely, ladies and gentlemen."

At the conclusion of her initial argument, the prosecutor told the jury that "[t]here is only one outcome or conclusion in this case.  And that is to find the defendant guilty on all counts, on all of the charges and the special allegation that he caused the pregnancies of that little girl."

The prosecutor ended her rebuttal argument by again focusing on the pregnancies as the basis for the great bodily injury allegations.  "Ladies and gentlemen, I am asking you at this point to do your job in bringing the defendant to justice.  Do your job in giving him a fair trial and find him guilty on all of those counts and the allegations that he impregnated that young girl on those two occasions."

The jury was instructed on the definition of great bodily injury pursuant to CALJIC No. 17.20 as follows:  "It is alleged in [Count[s] 6 and 7] that in the commission

6

of a felony, the defendant personally inflicted great bodily injury on [T.W.].  [¶]  If you find a defendant guilty, you must determine whether that defendant personally inflicted great bodily injury on [T.W.] in the commission of the crime.  [¶]  'Great bodily injury,' as used in this instruction, means a significant or substantial physical injury.  Minor, trivial or moderate injuries do not constitute great bodily injury.  [¶]  The People have the burden of proving the truth of this allegation.  If you have a reasonable doubt that it is true, you must find it to be not true.  [¶]  Include a special finding on that question in your verdict, using a form that will be supplied for that purpose."

As to counts 6 and 7, the jury returned verdicts finding true the allegations that defendant "inflicted great bodily injury on the victim [T.W.]:  to wit pregnancy."  The verdict forms made no mention of abortion.

*Analysis*

Both parties rely on *People v. Cross* (2008) 45 Cal.4th 58 (*Cross*), which we agree is controlling in this case.  The first issue addressed in *Cross* was "can a pregnancy without medical complications that results from unlawful but nonforcible sexual conduct with a minor support a finding of great bodily injury?"  (*Id.* at p. 61.)  The court answered the question in the affirmative.  "It can, and here evidence of the pregnancy was sufficient to support such a finding."  (*Ibid.*)  The court specifically rejected the contention "that a pregnancy without medical complications that results from nonforcible but unlawful intercourse can never support a finding of great bodily injury."[5]  (*Id.* at pp. 65-66.)

---

[5] A second issue presented in *Cross* was whether it was error to instruct that an abortion performed on the victim could support a great bodily injury finding.  The court found the instruction to be error because great bodily injury must be personally inflicted by the defendant and he had not performed the abortion. The error was found harmless, because the jury necessarily understood the defendant had not personally performed the abortion. (*Cross*, *supra*, 45 Cal.4th at pp. 66-69.)

7

"Great bodily injury 'means a significant or substantial physical injury.' [Citations.] . . . [D]etermining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury.  [Citations.]  '"A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description."' [Citations.]  Where to draw that line is for the jury to decide." (*Cross*, *supra*, 45 Cal.4th at pp. 63-64.)

The defendant in *Cross* impregnated his 13-year-old stepdaughter.  The defendant took the victim, who was 22 weeks pregnant, to a hospital where a surgical abortion was performed over the course of two successive days, involving the use of anesthesia.  The abortion lasted approximately 13 minutes and there were no complications.  (*Cross*, *supra*, 45 Cal.4th at pp. 61-62.)

The prosecutor in *Cross* argued to the jury that either the pregnancy or the abortion, or both, could be a basis for a finding of  personal infliction of great bodily injury.  (*Cross*, *supra*, 45 Cal.4th at p. 62.)  The prosecutor argued the pregnancy alone could constitute great bodily injury "so long as 'you find it's substantial or significant,'" and "'carrying a baby for 22 weeks . . .  in a 13–year–old body' was significant or substantial."  (*Ibid.*)  The prosecutor also argued "the abortion 'was substantial' and 'significant,' because it was an operation requiring anesthesia and drugs to control bleeding.  Turning to the statutory requirement of 'personally' inflicting great bodily injury, the prosecutor argued that defendant 'only needs to do the act of getting her pregnant or having an abortion.'"  (*Id.* at pp. 62-63.)

On review before our Supreme Court, the defendant argued that "a pregnancy without medical complications that results from nonforcible but unlawful intercourse [can] never support a finding of great bodily injury."  (*Cross, supra,* 45 Cal.4th at pp. 65-66.)  The Supreme Court emphatically disagreed.

"[A] pregnancy without medical complications that results from nonforcible but unlawful intercourse can . . . support a finding of great bodily injury."  (*Cross*, *supra*, 45 Cal. 4th at pp. 60, 65-66.)  "Proof that a victim's bodily injury is 'great'—that is,

8

significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." (*Id*. at p. 66.) "Here, with respect to [the victim's] pregnancy, the prosecutor urged the jurors to rely on their 'common experiences' to find that she had suffered great bodily injury by 'carrying a baby for 22 weeks or more than 22 weeks . . . in a 13–year–old body.' There was also testimony that [the victim], who had never given birth before, was carrying a fetus 'the size of two-and-a-half softballs.' We need not decide in this case whether every pregnancy resulting from unlawful sexual conduct, forcible or otherwise, will invariably support a factual determination that the victim has suffered a significant or substantial injury, within the language of section 12022.7. But we conclude that here, based solely on evidence of the pregnancy, the jury could reasonably have found that [the] 13–year–old [victim] suffered a significant or substantial physical injury." (*Ibid*.)

Here, defendant asserts that there was "no evidence of anything but that [T.W.] was pregnant for between 10 and 14 weeks, and then was not."[6] A reasonable trier of fact could easily reject an argument that trivializes the injury suffered by T.W. during the course of the lewd acts when defendant impregnated her at the tender ages of 12 and 13. "While pregnancy is difficult for any woman, here the pregnancy forced on this 12–year–old victim significantly exacerbated her injury." (*People v. Meneses* (2011) 193 Cal.App.4th 1087, 1092.)

Defendant attempts to distinguish this case from *Cross* by pointing out that, unlike in *Cross*, "there was no evidence as to the size of [T.W.]'s fetuses, no evidence of pain, no evidence of childbirth, or advanced pregnancy . . . ." The *Cross* court unambiguously made clear that a jury *may* find that a pregnancy by nonforcible intercourse without complications constitutes great bodily injury "based solely on evidence of the pregnancy." (*Cross*, *supra*, 45 Cal. 4th at pp. 66.) The jury could reasonably find that

---

[6] This is incorrect. T.W. exhibited outward symptoms of the second pregnancy's effect on her body. Defendant testified that he was knew T.W. was pregnant because she was not eating and was throwing up.

pregnancy in a child 12 and 13 years old, not terminated until the late first trimester and early second trimester, constituted great bodily injury.

Contrary to defendant's contention, the prosecutor's closing arguments were appropriate with respect to the abortions and the pregnancies. The prosecutor never identified the abortions themselves as the injuries at issue, instead repeatedly stating that the pregnancies were the injuries to be considered. At one point, the prosecutor stated that the abortions were "surgery that [T.W.] elected to have to change that condition, to get rid of that condition. She had to go through surgery in order to not be pregnant anymore. And you can take that into account when thinking about, again, the substantial and significant nature of her being pregnant." The evidence of the abortions was permissibly used to show the significance of the pregnancies by demonstrating the extent of "the medical care required to treat or repair the injur[ies]." (*Cross*, *supra*, 45 Cal. 4th at p. 66.) The jury could reasonably infer that the pregnancies were significant injuries from the fact that T.W. elected to have the abortions, and that the pregnancies were substantial, because surgery was required to terminate them.

Nothing in the prosecutor's statements indicated that the jury could consider the effect that carrying a child to full term would have on T.W. She did not mention advanced pregnancy or childbirth. The prosecutor's statements that the jurors should rely on their common experience to determine what the effect of the pregnancies on a 12 or 13 year-old girl would be were not misleading. It is well understood that pregnancy has certain inevitable effects on the body of a woman. The jury was capable of drawing from the common knowledge it possessed to determine whether the pregnancies were substantial and of significance as applied to the facts of this case. The prosecutor in *Cross* similarly stated that the jurors should "rely on their 'common experiences' to find that [the victim] had suffered great bodily injury by 'carrying a baby for 22 weeks or more than 22 weeks . . . in a 13–year–old body.'" (*Cross*, *supra*, 45 Cal. 4th at p. 66.) Our Supreme Court quoted this portion of the closing argument in support of its decision. (*Ibid.*)

The jury was told from the beginning of this case to its final conclusion that the great bodily injury allegations were based on the pregnancies. We are satisfied the jury's findings are based on the determination that the pregnancies were great bodily injury personally inflicted by defendant on his daughter during the commission of lewd acts on a child under the age of 14. There is no basis to overturn the findings.

## DISPOSITION

The judgment is affirmed.


KRIEGLER, J.


We concur:


MOSK, Acting P. J.


GOODMAN, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.