Filed 11/2/23  P. v. Christianson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C097113 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF21-0000279) |
| v. | |
| KIARA MARIE CHRISTIANSON, | |
| Defendant and Appellant. | |

Defendant Kiara Marie Christianson pleaded no contest to felony child abuse on her seven-week-old infant X.F. but did not admit the attendant great bodily injury enhancement.  The trial court found the great bodily injury enhancement true.  On appeal, defendant contends that there is insufficient evidence to support the great bodily injury enhancement.  We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

On October 13, 2019, defendant, the mother of seven-week-old infant X.F., woke up to find that X.F. was lying face down in the bed and not breathing.  Defendant and X.F.'s father called 911.  When the police and paramedics arrived, X.F. was not breathing

1

and did not have a pulse. X.F. slept in the same bed as his parents in the master bedroom. X.F. slept on the side of the bed closest to the wall, defendant slept in the middle, and X.F.'s father slept on the other side of the bed. When the responding officers arrived, they saw that the bedding was soft, loose sheets covered the mattress, and multiple clothes, blankets, and pillows were on the bed. An officer opined the condition of the bed was unsafe for an infant X.F.'s age.

In their report, the coroner concluded that X.F. died of positional asphyxia, meaning he was in a position that inhibited his breathing. According to the coroner, infants are particularly vulnerable to positional asphyxia because of their development. A red line across X.F.'s face and lividity in his nose, chin, abdomen, and chest were consistent with him being face down on the bed. The coroner also found methamphetamine in X.F.'s system and opined it was a contributing factor in his death, because methamphetamine is a stimulant that strains the cardiovascular system. The coroner concluded that any amount of methamphetamine can be lethal. The coroner characterized the level of methamphetamine from the illicit drug present as "low" and the level of amphetamine, a break down product of methamphetamine, as "below the reportable threshold." The coroner did not note any gross physical abnormalities in X.F.'s cardiovascular system and did not specify what level of methamphetamine would be lethal.

At the scene, defendant told the coroner that she placed X.F. on his back in the bed. According to a police report, she told social workers that when she placed X.F. in the bed, there was nothing around him or covering his face. Defendant also told the coroner that she had only used methamphetamine in the past and was not currently using methamphetamine. Defendant also claimed that she only breastfed X.F. for a short time but switched to formula.

Prior to X.F.'s death, defendant had an extensive history of drug abuse and child neglect with child and family services dating back to 2014 in multiple counties. In 2014,

2

defendant lived with her other three children in a "drug house," where the children were exposed to illicit drugs. In 2016, defendant lost custody and parental rights to those children due to her drug abuse. The three children suffered abuse and neglect in defendant's custody, and she was unable to safely reunify with them.

Medical records showed that defendant tested positive for methamphetamine three times during her pregnancy; X.F. tested positive for methamphetamine at birth; and as recently as September 11, 2019, defendant told medical providers she was breastfeeding X.F. According to an officer's report, when social workers confronted defendant about testing positive three times during her pregnancy, defendant claimed the positive tests were due to antidepressants she was taking and denied any drug use during her pregnancy. Throughout the investigation of X.F.'s death, defendant refused to test for methamphetamine, repeatedly denied any drug use, and disclaimed any knowledge of how X.F. could have gotten methamphetamine in his system.

About a month after X.F.'s death, defendant gave officers permission to search her home, and they found methamphetamine paraphernalia in defendant's unlocked dresser in the master bedroom. The paraphernalia included a scale with a white crystalline substance, which was later confirmed to be methamphetamine, on it; small jars with a similar white crystalline residue inside of them; 17 syringes; two armbands; a torch; and a lighter. When the officers told defendant that they found the paraphernalia and asked her why she lied about using methamphetamine, her first response was to tell the officers they could not search there because the drawer was locked. When the officers again asked why she lied, defendant admitted it was hard to quit using methamphetamine and she did not think they would find the paraphernalia. After the officers found the paraphernalia in defendant's bedroom, they tested two other minor children in the home for methamphetamine, and both tests came back positive.

Defendant's former roommate A.H. told officers that, after the search, defendant told him that the police found the paraphernalia but missed a needle with

3

methamphetamine in it. A.H. also told officers that before X.F. died, he had found a needle in the bathroom and he believed defendant smoked and injected methamphetamine. When officers asked if there was any other evidence of drug use in the home, A.H. said he had also found a mirror and straw by the washing machine. A.H. had spoken with defendant about using methamphetamine and how he could get methamphetamine for himself.

The People charged defendant with felony child abuse (Pen. Code, § 273a, subd. (a); statutory section citations that follow are found in the Penal Code unless otherwise stated) and alleged that she personally inflicted great bodily injury on a child under five years of age (§ 12022.7, subd. (d)). In exchange for pleading no contest to felony child abuse (§ 273a, subd. (a)), defendant agreed to a maximum sentence of 364 days in county jail and four years of probation. Defendant did not admit the great bodily injury enhancement. (§ 12022.7, subd. (d).) Defendant waived a jury trial on the enhancement. At the court trial on the enhancement, the People argued the trial court should base a true finding of the great bodily injury enhancement on both defendant placing X.F. in the bed to sleep and X.F. having methamphetamine in his system. The trial court found true the great bodily injury enhancement and sentenced defendant to 330 days in county jail and four years of probation.

## DISCUSSION

On appeal, defendant contends the evidence was insufficient to establish that she personally inflicted the great bodily injury on X.F. Specifically, defendant argues that the People failed to present sufficient evidence that: (1) defendant placing X.F. in the bed with soft bedding and additional items in it constituted personal infliction of great bodily injury; and (2) methamphetamine was a factor in X.F.'s death.

" 'When reviewing a challenge to the sufficiency of the evidence, we ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any*

4

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for " 'substantial evidence— that is, evidence which is reasonable, credible, and of solid value' " that would support a finding beyond a reasonable doubt.' [Citation.] In doing so, we 'view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that the jury could reasonably have deduced from that evidence.' [Citation.] 'We must also "accept logical inferences that the jury might have drawn from the circumstantial evidence." ' [Citation.] We do not question the credibility of a witness's testimony, so long as it is 'not inherently improbable,' nor do we reconsider the weight to be given any particular item of evidence." (*People v. Navarro* (2021) 12 Cal.5th 285, 302.) A great bodily injury finding must be upheld on appeal if it is supported by substantial evidence, even if the circumstances might reasonably be reconciled with a contrary finding. (*People v. Escobar* (1992) 3 Cal.4th 740, 750.)

To prove defendant was guilty of personally inflicting great bodily injury on a child under the age of five years, the People had to prove beyond a reasonable doubt that: (1) defendant personally inflicted great bodily injury on the child during the commission of felony child abuse; (2) at that time, the child was under the age of five years; and (3) the child was not an accomplice to the abuse. (CALCRIM No. 3162.) Defendant does not dispute that X.F. was under the age of five years old and was not an accomplice to the abuse. Defendant's sole contention on appeal is that she did not personally inflict the great bodily injury on X.F.

Personal infliction requires that the defendant be the direct and not just the proximate cause of the great bodily injury. (*People v. Warwick* (2010) 182 Cal.App.4th 788, 793.) "Personally inflicts" means a person "directly and not through an intermediary, 'cause[s] something (damaging or painful) to be endured.' " (*People v. Cross* (2008) 45 Cal.4th 58, 68.)

5

First, substantial evidence supports the trial court's finding that defendant personally inflicted great bodily injury on X.F. by placing him in an unsafe sleeping environment. Defendant placed X.F. in the bed, which was soft and covered with loose sheets, multiple blankets, pillows, and clothes. This was a dangerous condition for a child X.F.'s age. The trial court could reasonably infer that the condition of the sleeping area when the officers arrived was the same as when defendant placed X.F. in the bed and the trial court could accept from the evidence that the condition was dangerous. After she placed X.F. in the unsafe sleeping environment, defendant went to bed herself, rendering her unable to correct X.F.'s sleeping position if he did roll over on his stomach on his own. Thus, whether X.F. rolled over on his own or defendant moved X.F. in her sleep, substantial evidence supports the trial court's finding that defendant directly caused the great bodily injury to X.F.

Next, defendant has a long history of drug abuse, including losing parental rights to three children due to her drug abuse. When defendant was pregnant with X.F., she tested positive for methamphetamine three times. Officers found methamphetamine paraphernalia in defendant's home, and she admitted that it was hard for her to quit using methamphetamine. Defendant discussed using and procuring methamphetamine with her former roommate and told him officers missed a needle with methamphetamine in it when they searched her home. Defendant's former roommate also found evidence of methamphetamine use throughout defendant's home. X.F. tested positive for methamphetamine at birth and had methamphetamine in his system at his death. After X.F.'s death, two other minor children in defendant's home tested positive for methamphetamine. Defendant told medical providers that she was breastfeeding X.F. about four weeks before his death. It was reasonable for the court to infer defendant continued to use methamphetamine. It was also reasonable for the court to infer that defendant either by an affirmative act, such as breastfeeding, or a failure to act, such as

6

removing the methamphetamine she was using from the proximity of X.F., caused X.F. to ingest methamphetamine.

Based on the coroner's statements that any amount of methamphetamine can be lethal and that methamphetamine can strain the cardiovascular system, the trial court could properly rely on the pathologist's conclusion that the level of methamphetamine found in X.F. was sufficient to contribute to his death by positional asphyxia. Even when the evidence may support a contrary finding, as defendant suggests, it is not our role to reweigh the evidence where, as here, the evidence may reasonably justify the trier of fact's findings. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Having concluded substantial evidence supports the trial court's finding that defendant personally inflicted great bodily injury to X.F., we conclude there was sufficient evidence to support the trial court's true finding of the enhancement.

### DISPOSITION

The judgment is affirmed.

 

_____
        HULL, J.

We concur:

_____
EARL, P. J.

_____
ROBIE, J.

7