Filed 5/9/22  P. v. Segundo CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074100 |
| v. | (Super.Ct.No. RIF1804683) |
| FELIPE EDGAR SEGUNDO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge.

Affirmed in part, reversed in part, remanded with directions.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and

Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief

Assistant Attorney General, Julie L. Garland and Robin Urbanski, Assistant Attorneys

General, Steve Oetting and Warren J. Williams, Deputy Attorneys General, for Plaintiff

and Respondent.

1

Defendant and appellant Felipe Edgar Segundo impregnated his 13-year-old niece and was sentenced to a term of 35 years to life. On appeal, he raised four issues, three of which related to the propriety of the allegation that he personally inflicted great bodily injury (via the pregnancy), and the fourth of which stemmed from the lack of an outer time limit on Segundo's no contact order with his victim. We affirmed the judgment but reversed the no contact order, directing the trial court to determine again whether to impose such an order.

Segundo petitioned for Supreme Court review. The Court granted review and transferred the case back to this court with directions to vacate our decision and to reconsider the case in light of Assembly Bill No. 124 (Stats. 2021, ch. 695). We ordered supplemental briefing from the parties.

We agree with Segundo that resentencing is proper under Assembly Bill No. 124. Accordingly, we vacate the sentence and remand for resentencing under the new law. Our opinion remains the same in all other respects.[1]

## I. BACKGROUND

Jane Doe was born in Guatemala in February 2005 and at nine years old moved to the United States with her father. Initially, the two lived with one of Doe's uncles, and later Segundo (another of Doe's uncles) and his daughter moved in.

When Doe was 12 years old, Segundo began offering her money in exchange for sex. Segundo had sex with Doe in exchange for money "many" times. Segundo also

---

[1] Undesignated statutory references are to the Penal Code.

2

purchased a cell phone for Doe.  At the time, Doe did not know she could get pregnant from sex.

Doe eventually stopped having her period, and Segundo told her that she had become pregnant.  Segundo told Doe not to tell anyone that he was the father.

In August 2018, a school resource officer was called to Doe's school after a social worker noticed that Doe might be pregnant.  The officer interviewed Doe's father, who stated that Doe was receiving gifts such as a cell phone from an unknown person.

Doe gave birth to the child in September 2018.  After Doe and the baby returned home, Doe informed a social worker that Segundo was the father.  DNA samples were collected from Segundo, Doe, her father, her other uncle, and her baby.  Analysis of the samples showed that it was highly likely that Segundo was the father.  Segundo was arrested in October 2018.

Segundo was charged with four counts of lewd acts upon a child under the age of 14 (§ 288, subd. (a)).  The information also alleged that in committing one of the counts Segundo personally inflicted great bodily injury (§ 12022.7, subd. (a)), qualifying Segundo for sentencing under the "One Strike" law (§ 667.61, subds. (a), (d)(6)).  The jury found Segundo guilty on all four counts and found the special allegation true.  The trial court sentenced Segundo to 35 years to life, consisting of 10 years for counts 2 through 4 and, for count 1, a consecutive term of 25 years to life under the One Strike law.

## II. DISCUSSION

The first three of Segundo's appellate contentions all pertain to the special allegation that he personally inflicted great bodily injury on Doe. First, he contends that there was insufficient evidence for the jury to make such a finding. Second, he contends that the People engaged in misconduct during closing argument by inviting the jury to speculate about what injuries Doe could have sustained during childbirth in considering whether Segundo personally inflicted great bodily injury. Third, Segundo contends that the trial court should have instructed the jury that it could not find the special allegation true if it found that Doe was an accomplice. We reject each of these contentions. However, we agree with Segundo's fourth contention, which is that the order prohibiting Segundo from contacting Doe was unauthorized in that, assuming the court intended to impose the order under section 136, subdivision (i)(1) (section 136.2(i)(1)), the order did not contain a statutorily required time limit. We also agree with his contention that he may be resentenced under Assembly Bill No. 124.

### A. *Sufficiency of the Evidence*

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th

4

297, 331.) "'We do not reweigh evidence or reevaluate a witness's credibility.'" (*People v. Alexander* (2010) 49 Cal.4th 846, 917.)

Here, our analysis is guided in large part by *People v. Cross* (2008) 45 Cal.4th 58 (*Cross*). In *Cross*, the defendant impregnated his 13-year-old stepdaughter. (*Id.* at p. 61.) About five months into the pregnancy, the defendant took the stepdaughter to the hospital for an abortion. (*Id.* at pp. 61-62.) The jury found the defendant guilty of committing a lewd act on a child under the age of 14 and found that the defendant personally inflicted great bodily harm in committing the offense. (*Id.* at p. 63, citing §§ 288, subd. (a), 12022.7.)

Our Supreme Court rejected the defendant's argument that "a pregnancy without medical complications that results from unlawful but nonforcible intercourse . . . can never support a finding of great bodily injury." (*Cross*, *supra*, 45 Cal.4th at p. 63.) Noting that "[g]reat bodily injury 'means a significant or substantial physical injury'" and that "determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury," the Court concluded that the facts of the pregnancy could have led a reasonable jury to find the allegation true. (*Id.* at pp. 63-64, 66.) It stated: "Here, with respect to [the victim's] pregnancy, the prosecutor urged the jurors to rely on their 'common experiences' to find that she had suffered great bodily injury by 'carrying a baby for 22 weeks or more than 22 weeks . . . in a 13-year-old body.' There was also testimony that [the victim], who had never given birth before, was carrying a fetus 'the size of two-and-

5

a-half softballs.' We need not decide in this case whether every pregnancy resulting from unlawful sexual conduct, forcible or otherwise, will invariably support a factual determination that the victim has suffered a significant or substantial injury, within the language of section 12022.7. But we conclude that here, *based solely on evidence of the pregnancy*, the jury could reasonably have found that 13-year-old [victim] suffered a significant or substantial physical injury." (*Cross*, *supra*, at p. 66, italics added; see also *People v. Sargent* (1978) 86 Cal.App.3d 148, 152 ["Pregnancy can have one of three results—childbirth, abortion or miscarriage. Childbirth is an agonizing experience. An abortion by whatever method used constitutes a severe intrusion into a woman's body. A miscarriage speaks for itself."], cited in *Cross*, *supra*, at p. 73 (conc. opn. of Corrigan, J.).)

Our Supreme Court determined in *Cross* that evidence of a 13-year-old girl's routine pregnancy was itself enough to support a factual finding of great bodily injury. We do the same here.

### B. Prosecutorial Misconduct

Segundo next contends that the prosecutor engaged in misconduct during closing argument by asking the jury to imagine what injuries Doe could have sustained if she had to give birth all by herself, without medical intervention.

"Under state law, '"[a] prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct . . . ."' [Citation.] Prosecutorial misconduct violates the federal Constitution when it results in a fundamentally unfair trial." (*People*

6

*v. Steskal* (2021) 11 Cal.5th 332, 350.) "'"When attacking the prosecutor's remarks to the jury, the defendant must show' that in the context of the whole argument and the instructions there was '"a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner."'"" (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 306.)

The People argue that Segundo forfeited the argument because he did not object on this basis at trial. We agree the argument was forfeited for failure to object. (See *People v. Fayed* (2020) 9 Cal.5th 147, 204 ["To preserve a claim of prosecutorial misconduct on appeal, '"a criminal defendant must make a timely and specific objection and ask the trial court to admonish the jury to disregard the impropriety."'"].) Nevertheless, we address the claim on its merits. (See *People v. Williams* (2000) 78 Cal.App.4th 1118, 1126 [addressing on appeal issue that would otherwise be forfeited to "forestall a petition for writ of habeas corpus based on a claim of ineffectual counsel"].) We find no misconduct.

The prosecutor asked the jury during closing argument to "think about, for just a second, if there was no doctors present at all. And just concentrate on what he did to her and there's no medical intervention. How was she supposed to know what she was going to do? How was that baby supposed to come out?" Other comments were made in the same vein: "We—imagine if—and I can't stress this enough—there was no medical intervention to help her through this process." The prosecutor stated that "if she didn't get sutures, she would have had a vagina with a tear on it that would have never repaired.

7

She would have been left with that forever." At another point, the prosecutor stated: "So of course you can consider what could have happened to her and, luckily, what was prevented in this case." As our Supreme Court has stated, however, "a prosecutor should not invite the jury to speculate." (*People v. Yeoman* (2003) 31 Cal.4th 93, 149.)

Despite these fleeting remarks, however, the main focus of the prosecutor's argument on the issue of great bodily injury was to ask the jury to focus on Doe's pregnancy, and not any hypothetical about the circumstances of her child's birth. When discussing the definition of great bodily injury, the prosecutor noted that "just the act of committing the lewd and lascivious act alone isn't automatically great bodily injury. Obviously, there'd have to be something more. Which in this case is the pregnancy. Right?"

Some moments later, the prosecutor discussed the pregnancy being the great bodily injury at great length:

"With that said, I want to talk about the pregnancy alone. You know, for some of you this concept might be obvious. A pregnancy with all the changes that it entails on the body, it might be an obvious concept and you're done you don't even want to hear more. But for some people it might be, that look, female bodies, the female anatomy, is made to bear children, so how can this be an injury?

"So—and that's why I want to talk about that. People don't get pregnant just because they're born female. There has to be something causing the pregnancy, an outside act. Right? We're not born and the children just pop up whenever they want.

Some other act, either a woman voluntarily goes and artificially inseminates herself, let's say. Or there's a sexual partner involved. And for the most part, it's something that they either willing put themselves in or it happens because they should have known that they were going to go through that. And they're usually adults that know how to deal with it.

"And not all women want to have children, even though their bodies are capable of bearing children. Some. And some women can't even bear children. Keep in mind it's not every woman on this planet who has the ability to have kids. But even if they do, many women, in this day and age, don't want to have children. So it's an outside source that causes the pregnancy.

"And what does a pregnancy entail? The moment of conception you begin with—there's a start with hormone changes. Right? Out of nowhere, a body that regularly operates starts to operate differently, hormonal changes, blood flows, feelings of tiredness, feelings of dizziness, blood pressure drops. Why did I ask all of those questions to Dr. Mercado?[2] Because those are changes on the body that are induced by someone else. Some—a female that's born doesn't go through these changes unless another person makes them go through these changes.

"And in this case, a crime was committed that put into motion these changes that couldn't have happened without that crime. Okay? So all of those bodily changes, the belly growing, the cervix changing and opening, the hips changing to accommodate for

---

[2] At trial, Dr. Jose Mercado testified about the general impact of pregnancy and childbirth on a woman's body.

the childbirth, the belly getting bigger and bigger.  And we don't need a doctor to tell us the discomfort somebody has during a pregnancy with a big belly, the bending down and tying shoes becoming problematic, the sleeping at nights, not being able to sleep on a tummy, and all of those things that a kid can't really articulate.  You can use your common sense to figure that out.

"And it's not one day, two days, three days, four days.  This is, for her, because of her premature labor, an eight-month process.[3]  The changes that begin from day one going all the way and not ending at the time the baby comes out.  Because then she has to recover from all of that.  And it keeps going.

"And then the permanent changes that her body has gone through, like the cervix, like the skin, like the stretch marks, the hanging loose skin.  Those are permanent— permanent injury.  They're never going to go away.

"And that's because of something someone else that did that this child didn't want, that this child didn't engage in an act knowing that that could happen.  She was too little to take on the risks of what she was doing.  She had no concept of knowing that a child could be born because of what he was doing to her.  She didn't even know where babies come from, from the body.  No clue."

Later, the prosecutor correctly stated the law regarding pregnancy and great bodily injury:  "And that's what she went through.  A pregnancy alone—a pregnancy alone, not

---

**3**  Although here and at other moments during closing argument the prosecutor stated that Doe went into labor at eight months, neither side has pointed us to any evidence regarding how far along the pregnancy was when Doe gave birth.

talking about labor, not talking about delivery, not talking about permanent injuries. And if I misstate the law, I will be objecting. A pregnancy alone can be great bodily injury."

The prosecutor's emphasis on the pregnancy being the great bodily injury here demonstrates two things. First, it shows that, at the time of its verdict, it is unlikely the jury would have been unsure about whether it could find great bodily injury based on the strength of the evidence of the pregnancy alone. Second, it shows that the prosecutor's errant comments about other potential injuries were merely tangential. (See *People v. Steskal*, *supra*, 11 Cal.5th at p. 353 ["however the jury may have understood it, the prosecutor's reference to Nannette's absence 'was tangential in any event'"].) When considered in context of the prosecutor's closing argument as a whole, we find no reasonable likelihood that the jury ""understood or applied the complained-of comments in an improper or erroneous manner"" (*People v. Silveria and Travis*, *supra*, 10 Cal.4th at p. 306).

### C. Jury Instruction on Accomplice Liability

Segundo next contends that the trial court failed to instruct the jury that it could not find Segundo committed great bodily injury if it found that Doe was an accomplice to the crime that led to the injury.

The trial court gave the following instruction to the jury, based on CALCRIM No. 3160: "If you find the defendant guilty of the crime charged in Count 1, you must then decide whether the People have proved the additional allegation that the defendant personally inflicted great bodily injury on Jane Doe in the commission of that crime. [¶]

11

Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. [¶] Committing the crime of lewd and lascivious acts on a child under the age of 14 years is not by itself the infliction of great bodily injury." The trial court did not give an additional instruction, bracketed in CALCRIM No. 3160, stating that "The People must also prove that _____ <insert name of injured person> was not an accomplice to the crime." (See CALCRIM No. 3160; § 12022.7, subd. (a) ["Any person who personally inflicts great bodily injury on any person *other than an accomplice* in the commission of a felony or attempted felony shall be punished"], italics added.)

"""It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case."""" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

The trial court was not required to instruct the jury on accomplice liability, as Doe could not have been deemed to be an accomplice to Segundo's crimes. Without question, Doe was the *victim* of Segundo's crimes, and "'[i]t has long been settled that where a penal statute expressly outlaws conduct against minors, a minor *who is a victim* of the proscribed conduct is not an accomplice . . . . [Citations.] The rationale underlying this rule is that prosecution of the minor for cooperating with the defendant would be

12

inconsistent with the purpose of the law, which is to protect the minor. Because the minor, even if a willing participant in the defendant's conduct, is a victim and cannot be prosecuted as an accomplice, accomplice instructions are not appropriate." (*People v. Tobias* (2001) 25 Cal.4th 327, 334 (*Tobias*).)

Segundo's arguments to the contrary are unconvincing. In his reply brief, he asserts—without citing any examples from caselaw—that a male bigamist who gets a woman pregnant has not committed a great bodily injury against the woman because the woman was an accomplice. *Tobias* forecloses this argument; Doe cannot be deemed an accomplice, despite whatever the law might be for adults engaged in bigamy. Similarly, Segundo asserts (without citation to authority) that a man who commits statutory rape and gets a 17-year-old girl pregnant "should certainly be able to argue" that the girl was an accomplice. Again, this argument ignores *Tobias*. We find no instructional error.

### D. No Contact Order

At sentencing, the trial court stated: "Sir, you are ordered to not have any direct or indirect contact with Jane Doe." The trial court cited no statutory basis for its order. Segundo contends, and the People concede, that the order was unauthorized. We agree.

Presumably, the trial court's intention was to impose a no contact order pursuant to section 136.2(i)(1). That subdivision provides that when a defendant has been convicted of certain crimes, including crimes requiring the defendant to register as a sex offender under section 290, subdivision (c), "the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the

13

crime."  The subdivision further provides that "[t]he order may be valid for up to 10 years," and that "[i]t is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future violations, and the safety of a victim and the victim's immediate family."

Committing lewd and lascivious acts upon a child under the age of 14 requires the offender to register under section 290, subdivision (c), so section 136.2(i)(1) applies to Segundo.  If the trial court intended to impose a no contact order under section 136.2(i)(1), however, the order is unauthorized for lack of a time limit.  "Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court."  (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.)  Here, we have no indication that the court was aware of the extent of its discretionary authority regarding the duration of the no contact order.  We therefore strike the no contact order and remand so that the trial court can properly exercise its discretion.[4]

---

[4] As Segundo notes, it is also possible that the trial court's intention was to impose a no contact order pursuant to section 1202.05, subdivision (a), which provides that whenever a person is sentenced for certain crimes against minors (including those under section 288), "the court shall prohibit all visitation between the defendant and the child victim."  The trial court's order here, however, was framed in terms of contact, not visitation.  (See *People v. Scott* (2012) 203 Cal.App.4th 1303, 1318 [section 1202.05's "*sole* effect is to prevent *personal encounters*, without court approval, between a 'child victim' and a defendant confined in state prison"].)  In any event, on remand, the trial court should clarify the statutory basis for its no contact order, if it imposes one.

14

*E. Assembly Bill No. 124*

Segundo contends that he should be resentenced under Assembly Bill No. 124, which became effective January 1, 2022 and applies retroactively. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038-1039.) We agree.

Assembly Bill No. 124 added section 1016.7. It also added subdivision (b)(6) to section 1170, which now provides that "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense. [¶] (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking." A "'youth'" is defined as "any person under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b).) Segundo was sentenced to the middle term of six years for count 2, and he was 24 years old at the time of his arrest.

The People contend that remand is unnecessary because any error that would result in failing to consider the effect of Assembly Bill No. 124 is harmless. We disagree that we can reach such a conclusion now. At his sentencing, which took place before

15

Assembly Bill No. 124 became effective, Segundo was not entitled to a presumptive lower term upon a showing that his youth (or other factor the new law allows) was a "contributing factor in the commission" of his offenses. He thus had less of an incentive to develop the record on those issues than he otherwise might have had. On remand, Segundo will be able to present additional information to allow the trial court to make necessary findings and properly exercise its discretion under Assembly Bill No. 124.

## III. DISPOSITION

The no contact order is reversed and Segundo's sentence is vacated. The matter is remanded to the trial court for (1) resentencing in light of Assembly Bill No. 124 and (2) determining whether to impose a no contact order under section 136.2, subdivision (i)(1) or any other applicable section. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

We concur:

SLOUGH _____
Acting P. J.

MENETREZ _____
J.