Filed 11/26/24  P. v. Mendoza CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FERNANDO GARCIA MENDOZA,<br><br>Defendant and Appellant. | F087191<br><br>(Super. Ct. No. F15906992)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Darren K. Indermill and Warda Ali-Baloch, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Fernando Garcia Mendoza was charged with two counts of sexual intercourse or sodomy with a child 10 years of age or younger (Pen. Code,[1] § 288.7, subd (a) [counts 1–2]) and continuous sexual abuse of a child (§ 288.5, subd. (a) [count 3]).  In connection with count 3, the information alleged he personally inflicted bodily harm on a victim who was under 14 years of age (§ 667.61, subds. (d)(7), (j)(1)).  Prior to deliberation, the trial court—taking into account *People v. Cross* (2008) 45 Cal.4th 58 (*Cross*)—instructed:  "A pregnancy without medical complications may support a finding of bodily harm."  The jury found defendant guilty as charged and found true the personal-infliction-of-bodily-harm circumstance.  The court imposed 25 years to life on count 1, a consecutive 25 years to life on count 2, and a consecutive life term without the possibility of parole on count 3.

On appeal, defendant contends the aforementioned pregnancy instruction was erroneous.  Though we conclude this instruction was premised on a misunderstanding of *Cross*'s holding, we affirm the judgment because the error was not prejudicial.

## STATEMENT OF FACTS

Jane Doe[2] was born in 2002.  She knew defendant—who is 33 years her senior—since she was five or six years old.  Defendant dated Jane's mother and is the godfather of two of Jane's siblings.  At trial, Jane testified defendant sexually abused her more than 50 times over a five-year span.

### I.     Facts underlying count 1

In March 2010, while Jane's then-pregnant mother was in the hospital undergoing labor and delivery "for a couple of days," Jane and her siblings stayed home with

---

[1] Subsequent statutory citations refer to the Penal Code.

[2] We refer to the victim by a pseudonym to protect her privacy.  (Cal. Rules of Court, rule 8.90(b)(4).)

defendant. At some point during this period, defendant inserted his penis into Jane's anus. The penetration "hurt" and Jane "felt like poop was gonna come out."

## II.	Facts underlying count 2

Sometime in 2010 or 2011, defendant drove Jane and her brother to a vineyard under the pretense of taking her to soccer practice. Defendant ordered Jane to "go in the back seat" and Jane's brother to stay in the front passenger seat and "watch in case" "people from the fields come." Defendant followed Jane to the backseat and removed her shorts and underwear. Even though she repeatedly kicked him, he ended up on top of her, "put his penis in [her] vagina," and moved "back and forth." Jane cried and "told him to stop" because she "was hurting" and "bleeding."

## III.	Facts underlying count 3

The following incidents of sexual abuse occurred between March 7, 2012, and October 31, 2015:

At least once, defendant drove Jane to a field near a swap meet venue. In the backseat of his van, he inserted his penis into her rectum, which "really hurt" her physically.

Approximately two to four times, when Jane was around 10 years of age, defendant took her to a hotel to engage in vaginal and anal intercourse. On at least one occasion, he ejaculated.

At least twice, when Jane was around 12 years old, defendant drove her to a location near a high school. In the backseat of his van, he "pulled down her shorts" and "put his penis in [her] vagina."

In April or May 2015, Jane—then 13 years of age—was at home when defendant "came back" after "drop[ping] off [her] mom at the grocery store." He took her "into her mother's bedroom," "[p]ulled down her shorts," "inserted his penis inside of her vagina," and ejaculated. Defendant would repeat this pattern—i.e., drop off Jane's mother at the

grocery store, return to the residence, and have sex with Jane—"two or three or four times." The last of these incidents took place in October 2015.

On November 3, 2015, Jane experienced severe abdominal pain. She went to the bathroom because she "thought [she] had to poop." However, after "pushing" "for ten minutes," "a baby came out." Paramedics arrived at Jane's home and extracted the stillborn baby from the toilet. The size and weight of the baby indicated Jane had been pregnant for 22 to 24 weeks. Meanwhile, Jane—whose umbilical cord "was still hanging out"—was bleeding, "in pain," "shaking" "like she had [a] fever," and "crying." She "didn't know [she] was pregnant . . . ." Jane was transported to a hospital, where she delivered the placenta and bled "quite a bit." She developed a fever and fundal tenderness and was prescribed antibiotics and ibuprofen. Jane was discharged on November 6, 2015.

## DISCUSSION

### I. The pregnancy instruction was premised on a misunderstanding of *Cross*'s holding, but the error was not prejudicial.

#### a. *Pertinent criminal statutes*

"Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years." (§ 288.5, subd. (a).)

" 'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender."  (§ 1203.066, subd. (b).)

"[A] person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony . . . ."  (§ 288, subd. (a).)

Section 667.61, known as the One Strike law, "mandates indeterminate sentences for defendants who commit certain sexual offenses under specified circumstances." (*People v. Betts* (2020) 55 Cal.App.5th 294, 297.)  Under the One Strike law, a person convicted of continuous sexual abuse of a child under 14 years of age who personally inflicted bodily harm on the victim shall be imprisoned for life without the possibility of parole.  (§ 667.61, subds. (c)(9), (d)(7), (j)(1).)  "As used in this section, 'bodily harm' means any substantial physical injury resulting from the use of force that is more than the force necessary to commit" a violation of section 288.5.  (§ 667.61, subd. (k); see Black's Law Dict. (12th ed. 2024) pp. 783–784 ["force" defined as "[s]trength or energy exerted; the cause of motion or change"].)

b.  *Background*

The prosecution moved in limine for the following jury instruction:

"If you find the defendant guilty of the crime charged in Count 3, you must then decide whether the People have proved the additional allegation that the defendant personally inflicted bodily harm on [Jane] while she was under 14 years old during the commission of or as a direct result of that crime.

"A pregnancy without medical complications may support a finding of bodily harm."

The first paragraph modified the first paragraph of CALCRIM No. 3160 (Great Bodily Injury).  The second paragraph paraphrased the California Supreme Court's holding in

5.

*Cross* that a pregnancy without medical complications resulting from unlawful but nonforcible sexual conduct with a minor can support a finding of great bodily injury within the meaning of section 12022.7.  (See *Cross*, *supra*, 45 Cal.4th at pp. 60–61, 63–66.)  The trial court deferred its ruling.

After close of evidence, the following exchange occurred:

"THE COURT:  . . . .  Okay, [CALCRIM No.] 3160 deals with a pinpoint instruction and was an in limine motion raised by the People.  This is the time now to address that.  The People's initial request was to include some language that the bodily harm should occur in the commission of or as a direct result of that crime.  I'm declining to give that language because that language does not track the Penal Code for which this allegation derives.  Do the People want to be heard?

"[PROSECUTION]:  No, Your Honor, I agree.  The change – the correction the Court made is appropriate.

"THE COURT:  All right, now you've requested a pinpoint as follows:  'A pregnancy without medical complications may support a finding of bodily harm.'  Make your record, please.

"[PROSECUTION]:  That is based upon . . . *Cross*, *supra*, 45 Cal.4th 58 where the Court held that pregnancy even where it does not result in medical complications if it results from unlawful sexual conduct with a minor, it can support a finding of great bodily injury.  I recognize this is not – the allegation is not great bodily injury, it's in a sense more simple, it's simply bodily harm or substantial injury.  But I believe it's – the analysis would be equivalent.

"THE COURT:  All right.  Does Defense care to be heard?

"[DEFENSE COUNSEL]:  We'll just make an objection for the record.

"THE COURT:  Okay.  All right.  I'm going to give that pinpoint instruction, noting the objection for the record.  There's also the definition of bodily harm, which the Court will give as this is the definition included in [section 667.61, subdivision (k)].  'Bodily harm means any substantial physical injury resulting from the use of force that is more than the force necessary to commit the offense charged in Count Three,' period.  Does anyone want to be heard further with regards to that definition?

"[PROSECUTION]:  No, Your Honor.

"[DEFENSE COUNSEL]:  No.

"THE COURT:  All right.  Then I'm going to give [CALCRIM No.] 3160 noting the objection to the pinpoint portion of that instruction. . . .[3]"

The court gave the jury the following modified CALCRIM No. 3160:

"If you find the defendant guilty of the crime charged in Count 3, you must then decide whether the People have proved the additional allegation that the defendant personally inflicted bodily harm on [Jane] who was under 14 years of age.

"*Bodily Harm* means any substantial physical injury resulting from the use of force that is more than the force necessary to commit the offense charged in Count 3.

"Committing the crime of continuous sexual abuse of a child, as charged in Count 3, is not by itself the infliction of bodily harm.

"A pregnancy without medical complications may support a finding of bodily harm.

"The People have the burden of proving this allegation beyond a reasonable doubt.  If the People have not met this burden, you must find that the allegation has not been proved."

c.  *Analysis*

On appeal, defendant does not challenge his conviction for continuous sexual abuse of a child on count 3.  Instead, he argues the personal-infliction-of-bodily-harm circumstance finding must be stricken because the modified CALCRIM No. 3160 instruction "misstated the law" and prejudiced him.

i.  Error

"In a criminal trial, the court must give an instruction requested by a party if the instruction correctly states the law and relates to a material question upon which there is

---

**3** The case citation in the quoted text was reformatted to conform with the general rules of citation outlined by the California Style Manual.  (See generally Cal. Style Manual (4th ed. 2000).)

evidence substantial enough to merit consideration by the jury." (*People v. Anderson* (2015) 232 Cal.App.4th 1259, 1279.) "Even without a request, the court is required to give correct jury instructions on the general principles of law relevant to issues raised by the evidence." (*Ibid.*) "We review de novo the question of whether a jury instruction correctly states the law." (*People v. Quinonez* (2020) 46 Cal.App.5th 457, 465.)

No standard jury instruction covers the One Strike law's personal-infliction-of-bodily-harm circumstance in section 667.61. Thus, an appropriate instruction had to be fashioned. CALCRIM No. 3160, which pertains to findings of great bodily injury (see §§ 667.5, subd. (c)(8), 667.61, subd. (d)(6), 1192.7, subd. (c)(8), 12022.7, 12022.8), served as the template for the prosecution's proposed instruction.

CALCRIM No. 3160 reads in relevant part:

"If you find the defendant guilty of the crime[s] charged in Count[s] _____[,] . . . you must then decide whether . . . the People have proved the additional allegation that the defendant personally inflicted great bodily injury on _____ <*insert name of injured person*> during the commission . . . of that crime. . . . [¶] . . . [¶]

"*Great bodily injury* means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.

"[Committing the crime of _____ <*insert sexual offense charged*> is not by itself the infliction of great bodily injury.] [¶] . . . [¶]

"The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved."

The modified CALCRIM No. 3160, ultimately issued to the jury, revised the foregoing language. In the first paragraph, "great bodily injury" was replaced with "bodily harm," and the victim was specifically identified as "under 14 years of age." In the second paragraph, the definition of "[g]*reat bodily injury*" was replaced with section 667.61, subdivision (k)'s definition of "[b]*odily harm.*" In the third paragraph, "great bodily injury" was again replaced with "bodily harm." Finally, between the third and final

paragraphs, the following sentence was added: "A pregnancy without medical complications may support a finding of bodily harm."

We find nothing amiss with the changes to CALCRIM No. 3160's first three paragraphs, which better comport with the wording of section 667.61, subdivisions (d)(7) and (k). On the other hand, to the extent the prosecution and the trial court believed *Cross* stands for the proposition that a pregnancy without medical complications may support a finding of the bodily harm circumstance of section 667.61, subdivision (d)(7), they are mistaken.

In *Cross*, the 39-year-old defendant had sexual intercourse with the 13-year-old victim multiple times. (*Cross*, *supra*, 45 Cal.4th at p. 61.) Thereafter, the victim became pregnant, carried the fetus for 22 weeks, and underwent a surgical abortion with no medical complications. (*Id.* at pp. 61–62.) The jury convicted the defendant of lewd conduct in violation of section 288, subdivision (a) and—having been instructed "the pregnancy . . . could be great bodily injury"—found true an allegation under section 12022.7 that he personally inflicted great bodily injury in the commission of the offense. (*Cross*, *supra*, at p. 63.) The defendant appealed and the Sixth Appellate District affirmed the trial court's judgment. (*Ibid.*) The California Supreme Court granted the defendant's petition for review. It affirmed the appellate court's decision (*id.* at pp. 63, 69), holding a pregnancy without medical complications resulting from unlawful but nonforcible sexual conduct with a minor can support a finding of great bodily injury within the meaning of section 12022.7. (See *Cross*, *supra*, 45 Cal.4th at pp. 60–61, 63–66.) It described the relevant great bodily injury as "significant or substantial." (*Cross*, *supra*, 45 Cal.4th at p. 66.)

*Cross* did not address the One Strike law's bodily harm circumstance (§ 667.61, subd. (d)(7)), the circumstance alleged in this case. Instead, *Cross* concerned the One Strike law's great bodily injury circumstance (§ 667.61, subd. (d)(6)). In fact, *Cross* predated the enactment of Assembly Bill No. 1844 (2009–2010 Reg. Sess.), which added

9.

subdivisions (d)(7), (j), and (k) to section 667.61; the subdivisions relevant here.  (Stats. 2010, ch. 219, § 16.)

Section 667.61, subdivision (d)(7), states, "[t]he defendant personally inflicted bodily harm on the victim who was under 14 years of age."  Subdivision (k) of section 667.61 defines "bodily harm," not simply as a significant or substantial bodily injury, but as "any substantial physical injury resulting from the use of force that is more than the force necessary to commit [the underlying felony sex offense.]"  (§ 667.61, subd. (k).) Hence, in section 667.61, "great bodily injury" and "bodily harm" are not identical terms. "[T]he trial court's obligation is to state the law correctly."  (*People v. Runnion* (1994) 30 Cal.App.4th 852, 858.)  The language in the instruction regarding pregnancy was not supported by the holding in *Cross*.

ii.  <u>Prejudice</u>

"Where a jury is instructed on alternate theories of liability, one legally valid and one legally invalid, a federal constitutional error has occurred.  The defendant has been deprived of his or her right to 'a jury properly instructed in the relevant law.' [Citations.]"  (*In re Lopez* (2023) 14 Cal.5th 562, 580; see *People v. Aledamat* (2019) 8 Cal.5th 1, 7, fn. 3 [" 'alternative-theory error' "].)  "We evaluate the prejudice of such errors under the heightened standard of *Chapman v. California* (1967) 386 U.S. 18 . . . ." (*In re Ferrell* (2023) 14 Cal.5th 593, 602.)  "Under *Chapman*'s familiar standard, we reverse a conviction 'unless, after examining the entire cause, including the evidence, and considering all relevant circumstances,' the reviewing court 'determines the error was harmless beyond a reasonable doubt.' [Citation.]"  (*Ibid.*)  "[A] reviewing court may hold the error harmless where it would be impossible, based on the evidence, for a jury to make the findings reflected in its verdict without also making the findings that would support a valid theory of liability."  (*In re Lopez*, *supra*, at p. 568.)

Here, in addition to the legally invalid *Cross*-based pregnancy instruction, the modified CALCRIM No. 3160 included language properly setting forth the elements

10.

required for a finding of personal infliction of bodily harm under the One Strike law: (1) the accused personally inflicted a substantial physical injury on the victim; and (2) the injury resulted from the use of force exceeding the force necessary to commit the underlying felony sex offense.  (§ 667.61, subds. (d)(7), (k).)  The first element is tantamount to a finding of great bodily injury.  (Compare § 12022.7, subd. (f) ["significant or substantial physical injury"] with § 667.61, subd. (k) ["any substantial physical injury"].)  It is the second element that differentiates the section 667.61 bodily harm from great bodily injury.

We conclude the erroneous *Cross*-based pregnancy instruction was harmless beyond a reasonable doubt because the evidence that defendant impregnated Jane still constituted personal infliction of bodily harm under the One Strike law.  First, pregnancy "involves a significant bodily impairment primarily affecting a woman's health and well being" (*People v. Sargent* (1978) 86 Cal.App.3d 148, 151) and "amounts to significant and substantial bodily injury or damage" (*ibid.*), all the more so where—as here—the victim is only 13 years old (see *Cross*, *supra*, 45 Cal.4th at p. 61).  Furthermore, as Jane's testimony showed, "[c]hildbirth is an agonizing experience" (*People v. Sargent*, *supra*, at p. 152) and a stillbirth "speaks for itself" (*ibid.*; see *People v. Meneses* (2011) 193 Cal.App.4th 1087, 1091 ["self-evident trauma"]).

Second, pregnancy is "[t]he state of a female after conception and until the termination of the gestation."  (Stedman's Medical Dict. Online (2014) <https://www.westlaw.com/Document/Id936d7f370ec11e4b9b9ea2bcc83d096/View/Full Text.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0> [as of Nov. 26, 2024], archived at <https://perma.cc/HHU6-AJCX>.)  Conception is the "[f]ertilization of oocyte by a sperm."  (Stedman's Medical Dict. Online (2014) <https://www.westlaw.com/Document/Id1278c6570ec11e4b9b9ea2bcc83d096/View/Full Text.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=cblt1.0> [as of Nov. 26, 2024], archived at <https://perma.cc/RML7-LN7A>; see 1 Attorneys Medical

11.

Advisor, § 14:1 ["fertilization of the egg"] <https://www.westlaw.com/Document/ I06510e0ab2aa11d9927fe0461d5ad95f/View/FullText.html?transitionType=Default&con textData=(sc.Default)&VR=3.0&RS=cblt1.0> [as of Nov. 26, 2024], archived at <https://perma.cc/Q66B-2WPJ>.)  Fertilization cannot commence without the deposit of sperm in the vagina (see 17 Attorneys Textbook of Medicine (3d ed.) § 294.02 <https://plus.lexis.com/api/permalink/86205e91-3413-4407-8411-aafaec730882/ ?context=1530671> [as of Nov. 26, 2024], archived at <https://perma.cc/P4PC-VVP6>), a feat accomplished through emission and ejaculation (see 1 Attorneys Medical Advisor, § 11:6 <https://www.westlaw.com/Document/I065071d3b2aa11d9927fe0461d5ad95f/ View/FullText.html?transitionType=Default&contextData=(sc.Default)&VR=3.0&RS=c blt1.0> [as of Nov. 26, 2024], archived at <https://perma.cc/GK5M-DF5K>).[4]

"Continuous sexual abuse requires proof of at least three acts of substantial sexual contact or lewd and lascivious conduct over a period of at least three months."  (*People v. Ogg* (2013) 219 Cal.App.4th 173, 182, citing § 288.5.)  Penile penetration of a victim's vagina or rectum already constitutes substantial sexual conduct (§ 1203.066, subd. (b);

---

[4] " 'Ejaculation' and 'emission' are the terms given to the series of events which starts with the movement of sperm into the vas deferens, continues with the production of semen and ends with expulsion of semen from the penis.  As the two terms imply, these events can be understood as occurring in two stages, each controlled by a different section of the spinal cord.  The first stage, emission, is stimulated by that portion of the spinal cord labelled 'L-1' and 'L-2' (vertebrae in the lumbar region).  During emission, the epididymis, the smooth muscle in the walls of the vas deferens, prostate and seminal vesicles contract in wavelike movements (peristaltic waves), which squeeze the fluid along its path to the penis from the testes.  [¶]  The second stage, ejaculation, is stimulated by the sacral region (below the lumbar region) of the spinal cord.  During ejaculation, the seminal vesicles, prostate and bulbourethral glands secrete their products.  When semen reaches the penis, muscles at the base of the penis (bulbocavernosus and ischiocavernosus muscles) contract to propel semen out of the body."  (1 Attorneys Medical Advisor, § 11:6, fn. omitted <https://www.westlaw.com/Document/ I065071d3b2aa11d9927fe0461d5ad95f/View/FullText.html?transitionType=Default&con textData=(sc.Default)&VR=3.0&RS=cblt1.0> [as of Nov. 26, 2024], archived at <https://perma.cc/GK5M-DF5K>.)

see *People v. Brown* (2017) 11 Cal.App.5th 332, 340 ["force inherent in the act of penetration"]), rendering unnecessary evidence of emission and ejaculation into the vagina (cf. *People v. Wallace* (2008) 44 Cal.4th 1032, 1079 ["Ejaculation . . . is not an element of rape; all that is required is 'sexual penetration, however slight.' "]).  Lewd and lascivious conduct "requires ' "any touching" of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child.' "  (*People v. Lopez* (2010) 185 Cal.App.4th 1220, 1229, quoting *People v. Martinez* (1995) 11 Cal.4th 434, 452; see § 288, subd. (a).)  Likewise, a violation of section 288 does not depend on proof of emission or ejaculation into the vagina.  (See *People v. Pilgrim* (1963) 215 Cal.App.2d 374, 379.)  Neither mere penetration nor "touching with lustful intent" (*People v. Coontz* (1953) 119 Cal.App.2d 276, 279) can initiate the fertilization process.  Therefore, a pregnancy that results from continuous sexual abuse entails the use of force exceeding the force necessary to commit this felony.

**DISPOSITION**

The judgment is affirmed.

DETJEN, Acting P. J.

WE CONCUR:

SMITH, J.

MEEHAN, J.

13.